UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 3, 2006

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. |
| v. : | MAGISTRATE NO. 06-471 |
| GEORGE ALTON COWSER, : | GRAND JURY ORIGINAL |
| aka Charlie Edward Cowser : | VIOLATIONS: |
| : | 18 U.S.C. § 1341 (Mail Fraud) |
| Defendant. : | 18 U.S.C. § 2 (Causing an Act to be Done) |
| : | 22 D.C. Code §§ 3221(a), 3222(a)(1) |
| : | (First Degree Fraud-Felony) |

## INDICTMENT

The Grand Jury charges that:

### COUNTS ONE THROUGH FOUR – MAIL FRAUD

A. Introduction

At all times material to this Indictment:

1. Fremont Investment and Loans ("Fremont") was a California-charted industrial bank that was a wholly owned corporate subsidiary of Fremont General Corporation, a publicly traded corporation organized under the laws of the state of Nevada. Fremont offered a number of financial services, including providing residential loans and mortgages across the country. Fremont had offices across the country, including an office based at 2727 East Imperial Highway, Brea, California.

2. In the course of its normal operations, Fremont offered and sold wholesale mortgages to

various mortgage brokers who in turn provided the mortgages to residents across the country, including in Maryland, Virginia, and the District of Columbia. Fremont normally funded its mortgages by wire transfers of cash from its bank account in California to escrow accounts, which were in turn controlled by local settlement agents. These settlement agents controlled the escrow funds and disbursed the funds according to settlement instructions once the property had been closed and the mortgage documents were properly executed. The settlement agents also ensured that the documents were properly signed and notarized, recorded, and that the original documents were both officially recorded and returned to Fremont.

3. Milestone Title ("Milestone") was a title and settlement services company that provided title insurance and real estate closing services for properties located in the District of Columbia. Milestone was located at 4351 Garden City Drive, Suite 350, Landover, MD. Milestone had operated as a settlement agent for several Fremont mortgage closings.

4. Aspire Title Company ("Aspire") was a title and settlement services company that provided title insurance and real estate closing services for properties located in the District of Columbia. Aspire was located at 4425-B Nicole Drive, Lanham Maryland. Aspire had operated as a settlement agent for several Fremont mortgage closings.

5. Defendant GEORGE ALTON COWSER ("COWSER"), aka Charlie Edward Cowser, organized and operated Reverse Properties, Inc. ("REVERSE"), a corporation organized under the laws of the District of Columbia. Between in or about 2005 and in or about 2006, COWSER claimed to be the President of REVERSE and conducted business transactions in its name. REVERSE was organized to engage in real estate consulting and development. COWSER was not a licensed real estate agent in the District of Columbia.

6. COWSER held a number of bank accounts in his name at Chevy Chase Bank, FSB ("Chevy Chase Bank") in Maryland (account numbers XXX-XX0315-8; XXX-XX0173-0; XXX-XX0148-8; XXX-XX1560-5; and XXX-XX0507-1). COWSER also controlled another bank account at Chevy Chase Bank in the name of "House of Brotherly Love" (account number XXX-XX0082-3). Between in or about 2005 and in or about 2006, COWSER utilized these Chevy Chase Bank accounts to receive and disburse monies related to his personal and business dealings.

7. Chevy Chase Bank and Fremont were financial institutions whose assets were insured by the Federal Deposit Insurance Corporation.

B. <u>The Scheme and Artifice</u>

8. Between in or about May of 2005 and in or about March of 2006, in the District of Columbia and elsewhere, defendant COWSER knowingly and willfully devised and intended to devise a scheme and artifice to defraud owners of property, individual buyers, and Fremont, among others, and obtain money and property from these owners, buyers and Fremont, among others, by means of false and fraudulent pretenses, representations, and promises, well knowing that the pretenses, representations, and promises were false and fraudulent when made.

C. <u>The Purpose of the Scheme and Artifice</u>

9. The purpose of this scheme was for defendant COWSER to sell or attempt to sell real estate property in the District of Columbia that he claimed to own personally, or in the name of REVERSE, in fee simple. Neither COWSER nor REVERSE owned these properties, had an independent claim of ownership to these properties, or had any contract to sell these properties for the true owners. Even though COWSER knew he did not own these properties, he knowingly and

intentionally signed sales contracts, and closed on the transfer of real estate properties in the District of Columbia for significant personal profit at the expense of the true owners, defrauded buyers, and financial institutions. As part of the scheme, COWSER profited, and caused: real estate property to be transferred to him or REVERSE, monies to be wired across state lines, and documents containing false statements and fraudulent representations to be mailed.

D. <u>Manner and Means Used to Carry Out the Scheme and Artifice</u>

This fraudulent scheme and artifice was carried out in the following particular ways, among others:

10. Between in or about 2005 and in or about 2006, COWSER identified residential properties in the District of Columbia that were either vacant or in arrearage for failing to pay property taxes. After identifying these properties, COWSER would offer the properties for sale to more than one buyer. After identifying interested buyers, COWSER would either pay or have paid the back property taxes for the specified property.

11. COWSER told potential buyers that he owned residential properties across the District of Columbia, and that he was willing to sell any and all of the properties. In many cases, COWSER attempted to sell the same property he claimed to own to more than one buyer at or about the same time. Cowser did not own any of the properties he offered for sale.

12. In or about 2005, COWSER created and signed false quit claim deeds for properties in the District of Columbia. The false quitclaim deeds were notarized and contained COWSER's signature and the forged signatures of the true owner that purported to transfer title to the properties to COWSER or REVERSE for ten dollars consideration. COWSER recorded the false quit claim

deeds with the D.C. Recorder of Deeds and either paid, or had paid, the transfer recording fees. The D.C. Recorder of Deeds, without contacting the previous owners, transferred the titles for the properties to COWSER or REVERSE.

13. Starting in or about May 2005, COWSER offered to sell 1321 West Virginia Ave., NE to interested buyers. COWSER did not own the property, but he fraudulently told several interested buyers he owned the property.

14. On or about June 20, 2005, COWSER signed a contract with an individual (hereinafter "Buyer #1") to purchase 1321 West Virginia Ave., NE for $225,000. Pursuant to the contract, Buyer #1 paid $5,000 to COWSER as a down payment for the property. The closing for the property was scheduled for September 30, 2005.

15. On or about June 27, 2005, COWSER signed a quit claim deed for 1321 West Virginia Ave., NE that purported to have the signature of the true owner (hereinafter "Owner #1"). The quit claim deed purported to transfer title of the property from Owner #1 to COWSER. The signature of Owner #1 was forged.

16. On or about July 14, 2005, COWSER recorded the quit claim deed with the D.C. Recorder of Deeds and caused transfer fees to be paid for the property at 1321 West Virginia Ave., NE. As a result, the D.C. Recorder of Deeds transferred title in the property from Owner #1 to COWSER.

17. Prior to on or about September 30, 2005, COWSER spoke with Owner #1 who told COWSER that he did not sell him 1321 West Virginia Ave., NE.

18. On or about September 30, 2005, COWSER attempted to close on 1321 West Virginia

Ave., NE, but Buyer #1 withdrew from the deal because Buyer #1's attorney advised him there was a cloud on the title of 1321 West Virginia Ave., NE. At the time of the closing, Buyer #1 advised COWSER that there was a problem with the title for 1321 West Virginia Ave., NE. COWSER did not return Buyer 1's down payment or other costs.

19. Subsequent to in or about September of 2005, COWSER continued to attempt to sell 1321 West Virginia Ave., NE, and fraudulently told prospective buyers that he owned the property.

20. On or about January 5, 2006 COWSER, agreed to sell 1321 West Virginia Ave., NE to an individual (hereinafter "Buyer #2") for $300,000. Buyer #2 obtained two mortgages from Fremont for a total amount in excess of $284,000. Milestone agreed to act as the settlement agent. Fremont electronically wired the mortgage monies from its bank account to Milestone. Fremont made two separate wires to Milestone, one for each mortgage obtained by Buyer #2.

21. On or about February 13, 2006, COWSER and Buyer #2 independently appeared at the closing and presented identification to Milestone. Buyer #2 signed loan documents. COWSER and Buyer #2 signed multiple copies of the closing and settlement documents, and one of the documents COWSER executed was a deed purporting to transfer title for 1321 West Virginia Ave., NE to Buyer #2. Thereafter, Milestone then transmitted loan documents and related recording/transfer materials from Maryland to: (a) Fremont in California, and (b) to Executive Abstracting Co., LLC, an abstract company operating in the District of Columbia.

22. At the conclusion of the settlement discussed in paragraph 21, COWSER received a check for $214,368.54 from Milestone's escrow account. COWSER deposited the check into one of his Chevy Chase Bank accounts on or about February 13, 2006.

23. On or about February 22, 2006, the D.C. Recorder of Deeds received the deed purporting to transfer title in 1321 West Virginia Ave., NE from COWSER to Buyer#2, and recorded the deed in the public record. The D.C. Recorder of Deeds, located at 515 D Street, NW, in the District of Columbia, then mailed the recorded deed and loan documents to Milestone at 4351 Garden City Drive, Suite 350, Landover, MD via the U.S. Postal Service.

24. While COWSER was selling 1321 West Virginia Ave., NE to Buyer #2, he also fraudulently offered to sell the same property to another individual (hereinafter "Buyer #3").

25. On or about February 17, 2006, COWSER signed an agreement to sell 1321 West Virginia Ave., NE to Buyer #3 for $370,000. Buyer #3 obtained mortgages for the property from Fremont in excess of $368,000. Aspire agreed to act as the settlement agent. Fremont provided the mortgage monies from its bank account in California to Aspire, located in Maryland.

26. On or about February 17, 2006, Buyer #3 appeared at the closing, presented identification to Aspire's representative, and signed multiple copies of the closing, loan, and settlement documents.

27. On or about February 18, 2006, COWSER appeared at the closing, presented identification, and signed multiple copies of the closing and settlement documents. One of the documents executed by COWSER and Buyer #3 was a deed purporting to transfer title for 1321 West Virginia Ave., NE to Buyer #3. Thereafter, Aspire in Maryland then mailed loan documents and related recording/transfer materials: (a) to Fremont in California, (b) to the D.C. Tax Certificate Office at 941 North Capitol Street, NE, in the District of Columbia, (c) to the D.C. Treasurer at 941 North Capitol Street, NE, in the District of Columbia and (d) to First American Title Insurance at

1801 K Street, NW, Suite 200, in the District of Columbia.

28. On February 22, 2006, at COWSER's instruction, Aspire transferred to COWSER $339,815.25 via wire transfers from its escrow account: $183,815.25 to one of COWSER's Chevy Chase Bank account, and $156,000 to a corporate designee assigned by COWSER.

E. <u>Use of the Mails in Furtherance of the Scheme and Artifice</u>

29. On or about the approximate date listed below, COWSER, for the purpose of executing and attempting to execute the scheme and artifice, did cause to be placed in an authorized depository for mail matter a package containing recorded loan documents and transfer deed, addressed to Milestone at 4351 Garden City Drive, Suite 350, Landover, MD from the D.C. Recorder of Deeds in the District of Columbia, to be sent and delivered by the Postal Service:

| Count | Date (on or about) | Mailed Item(s) |
|---|---|---|
| ONE | February 22, 2006 | Recorded loan documents and deed transfer of 1321 West Virginia Ave. NE |

30. On or about each of the approximate dates listed below, COWSER, for the purpose of executing and attempting to execute the scheme and artifice, did cause to be deposited the following packages containing documents and/or payments related to the transfer of 1321 West Virginia Ave., NE, to be delivered by the United Parcel Service, Inc. ("UPS"), a commercial interstate carrier, into the District of Columbia:

| Count | Date (on or about) | Mailed Item(s) |
|---|---|---|
| TWO | February 20, 2006 | Payment and documents to D.C. Treasurer associated with transfer and recording of 1321 West Virginia Ave. NE, mailed from Aspire to the D.C. Tax Certificate Office in the District of Columbia |
| THREE | March 20, 2006 | Payment and documents to D.C. Treasurer associated with transfer and recording of 1321 West Virginia Ave. NE , mailed from Aspire to the D.C. Treasurer in the District of Columbia |
| FOUR | March 28, 2006 | Loan documents, deed transfer, closing documents, and payment for transfer and recording of 1321 West Virginia Ave. NE, mailed from Aspire to First American Title Insurance in the District of Columbia |

**(Mail Fraud and Causing an Act to be Done, in violation of**
**Title 18, United States Code, Sections 1341 and 2)**

## COUNT FIVE
## FRAUD IN THE FIRST DEGREE-FELONY

31. Paragraphs 1 through 28 of the Indictment are incorporated herein by reference.

32. Between in or about March 2005, and in or about May 2006, within the District of Columbia and elsewhere, defendant COWSER engaged in a scheme and systematic course of conduct with intent to defraud and obtain property of Buyer#1, Buyer#2, Buyer#3, Fremont and Owner #1, as discussed above, by means of false or fraudulent pretenses, representations, and promises and thereby obtained from each individual and corporation property of a value of $250 or more belonging to the respective individual or corporation, consisting of title, real property, and/or money.

**(Fraud in the First Degree-Felony, in violation of**
**Title 22, D.C. Code Sections 3221(a), 3222(a)(1) (2001 ed.))**

## COUNT SIX
## FRAUD IN THE FIRST DEGREE-FELONY

33. Paragraphs 1 through 28 of the Indictment are incorporated herein by reference.

34. Between in or about March, 2005 and in or about May, 2006, defendant COWSER offered to sell 1219 Orren Street, NE to interested buyers. COWSER did not own the property, but fraudulently told several interested buyers he owned the property.

35. In or about May of 2005, COWSER signed a contract to sell 1219 Orren Street, NE to an individual (hereinafter "Buyer #4") if Buyer #4 paid $19,000, which COWSER claimed was the back taxes due on the property. Buyer #4 paid COWSER $8,000 in deposits on the property. COWSER did not transfer 1219 Orren Street, NE to Buyer #4, nor did he return all of Buyer #4's deposit money.

36. On or about December 22, 2005, COWSER signed a quit claim deed for 1219 Orren Street, NE that purported to have the signature of the true owner (hereinafter "Owner #2"). The quit claim deed purported to transfer title of the property from Owner #2 to REVERSE. Owner #2's signature on the deed was forged.

37. On or about December 29, 2005, COWSER recorded the quit claim deed with the D.C. Recorder of Deeds and caused the transfer fees to be paid for the property. As a result, the D.C. Recorder of Deeds transferred title on the property from Owner#2 to REVERSE.

38. On or about February 24, 2006, COWSER signed a sales contract to sell 1219 Orren Street, NE to B&RTC Properties ("B&RTC"), a corporation. COWSER agreed to sell the property on behalf of REVERSE to B&RTC for $200,000. Deposit money of at least $150.00 was paid to

COWSER by B&RTC.

39. COWSER made efforts to close on the property on March 7, 2006, but the settlement company, Milestone, cancelled the closing after it detected COWSER's fraudulent transfer of 1321 West Virginia Ave., NE, as was discussed above in counts 1 through 4.

40. Between in or about March 2005, and in or about May 2006, within the District of Columbia and elsewhere, defendant COWSER engaged in a scheme and systematic course of conduct with intent to defraud and obtain property of Buyer#4, B&RTC, and Owner #2, as discussed above, by means of false or fraudulent pretenses, representations, and promises and thereby obtained from each individual and corporation property of a value of $250 or more belonging to the respective individual or corporation, consisting of title, real property, and/or money.

**(Fraud in the First Degree-Felony, in violation of
Title 22, D.C. Code Sections 3221(a), 3222(a)(1) (2001 ed.))**

## COUNT SEVEN
## FRAUD IN THE FIRST DEGREE-FELONY

41. Paragraphs 1 through 28 and 34-39 of the Indictment are incorporated herein by reference.

42. Between in or about March, 2005 and in or about May, 2006, COWSER offered to sell 1338 W Street, SE to interested buyers. COWSER did not own the property, but fraudulently told several interested buyers he owned the property.

43. On or about December 22, 2005, COWSER signed a quit claim deed for 1338 W Street, SE that purported to have the signature of the true owner (hereinafter "Owner #3"). The quit claim

deed purported to transfer title of the property from Owner #3 to REVERSE. Owner #3's signature on the deed was forged.

44. On or about December 29, 2005, COWSER recorded the quit claim deed with the D.C. Recorder of Deeds and caused the transfer fees to be paid for the property. As a result, the D.C. Recorder to Deeds transferred title to the property from Owner#3 to REVERSE.

45. On or about February 24, 2006, COWSER signed a sales contract to sell 1338 W Street, SE to B&RTC. COWSER agreed to sell the property on behalf of REVERSE to B&RTC for $200,000. Deposit money of at least $200.00 was paid to COWSER by B&RTC.

46. On or about March 7, 2006, COWSER made efforts to close on the property, but the settlement company, Milestone, cancelled the closing after it detected COWSER's fraudulent transfer of 1321 West Virginia Ave., NE.

47. Between in or about March 2005, and in or about May 2006, within the District of Columbia and elsewhere, defendant COWSER engaged in a scheme and systematic course of conduct with intent to defraud and obtain property of B&RTC and Owner #3, as discussed above, by means of false or fraudulent pretenses, representations, and promises and thereby obtained from each individual and corporation property of a value of $250 or more belonging to the respective individual or corporation, consisting of title, real property, and/or money.

**(Fraud in the First Degree-Felony, in violation of
Title 22, D.C. Code Sections 3221(a), 3222(a)(1) (2001 ed.))**

## **CRIMINAL FORFEITURE ALLEGATION**

1.      The violations alleged in Counts 1 through 4 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

2.      Upon conviction of one or more of the offenses alleged in Counts 1 through 4 of this Indictment, defendant COWSER shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

Money Judgment

$559,183.79 which represents the sum of money equal to the total amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of mail fraud, in violation of 18 U.S.C. §1341.

Personal Property

One 2006 Mitsubishi Outlander XL vehicle, VIN JA4LZ81F26U019911, which represents personal property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of mail fraud, in violation of 18 U.S.C. §1341.

By virtue of the offenses charged in counts 1 through 4 of this Indictment, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by 18 United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a)(2)(A))**

A TRUE BILL

FOREPERSON

*Jeffrey A. Taylor/SJD*
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA