**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 07-083 (JR)** |
| | : | |
| **v.** | : | |
| | : | |
| **GEORGE A. COWSER,** | : | |
| | : | **Sentencing Date: December 4, 2007** |
| **Defendant.** | : | |
| _____ | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, submits this memorandum in aid of sentencing of defendant George Cowser

(Cowser).  Based on the defendant's: (1) fraudulent conduct as set forth in the Indictment; (2)

contemptuous post-Indictment criminal conduct while on release; (3) failure to accept

responsibility; (4) squandering of the over $550,000 in fraudulent proceeds; and (5) continuous

and significant history of committing fraud for over almost thirty years, the United States

respectfully recommends that the Court sentence the defendant to a term of imprisonment of 78

months.  The Government believes this sentence is appropriate under all the circumstances and

represents the low end of the applicable guideline range of 78 to 97 months incarceration.

## I.    BACKGROUND

On September 26, 2007, defendant pled guilty, by way of an "Alford" plea, to a seven-

count indictment that charged him with four counts of Wire Fraud, 18 U.S.C. §1341 and three

counts of First Degree Fraud (Felony), 22 D.C. Code §§3221(a) and 3222(a)(1).   During his plea

colloquy, the defendant did not accept responsibility for his actions, but conceded that the

government had overwhelming evidence of his guilt. As is more fully set forth in the Indictment,

the defendant fraudulently took homes from at least three owners by filing forged quit claim

deeds with the D.C. Recorder of Deeds, and then attempting to sell those properties. In one case, the defendant sold 1321 West Virginia Ave., NE to two different buyers within a single week. In the process, the defendant defrauded numerous home owners, mortgage companies, title companies, insurance companies, home buyers, and investors. Through his actions, the defendant caused or intended to create a loss of over $2 million dollars, and he obtained (and wasted) over $559,183.83. After being indicted, Cowser engaged in additional real estate fraud and intentionally violated his conditions of release.

II.    **SENTENCING FACTORS**

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below, numbered as they are in Section 3553(a).

A. The Court should consider the nature and circumstances of the offense. Here, the defendant engaged in significant real estate fraud throughout the city and attempted to cause over $2 million in loss. He also obtained over $500,000 as part of the scheme and squandered almost all of that money on jewelry, cars, clothes, electronics and cash spending. See PSR ¶¶ 27, 33 and 50. The offense also negatively effected the integrity of individual home owners' title and numerous financial transactions.

The Court should also consider the history and characteristics of the defendant. As discussed in greater depth in part C below and the Presentence Report ("PSR"), the defendant is a recidivist criminal engaged in various types of fraud, has a long criminal history, and an inconsistent employment record. The government recognizes that the defendant does have some treatable medical conditions and that he was honorably discharged from the U.S. Army over

thirty-eight years ago in 1969. <u>See</u> PSR ¶¶ 111-114, and 130.

(B) The Court should also consider the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence; (3) to protect the pubic; and (4) to provide defendant with appropriate education or vocational training. In this matter, the offense was serious and requires adequate punishment. As is also clear from Ms. Williams' victim impact statement, the defendant's conduct had a serious impact on the victims, economically, physically, and emotionally. <u>See</u> Attachment 1 (Victim Impact Statement of Lorraine Williams). The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from future criminal acts by defendant. The defendant does not appear to need further education or vocational training.

(C) The Court should consider the kinds of sentences available. The defendant pled guilty to four counts of Mail Fraud, in violation of Title 18, United States Code, Section 1341 and three counts of Fraud in the First Degree- Felony, in violation of Title 22 D.C. Code, Sections 3221(a) and 3222(a). The maximum sentence for each offense of Mail Fraud is twenty years imprisonment, a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, and a three-year term of supervised release. The maximum sentence for each offense of First Degree Fraud- Felony is ten years in jail, a fine of $5,000 or up to three times the value of the property obtained or lost, a special assessment of $100, and a three-year term of supervised release. He is not be eligible for probation. <u>See</u> PSR ¶ 155.

(D) The Court should also consider the sentencing range established by the United States

Sentencing Guidelines ("USSG").  As to these guidelines, the probation officer believes, and the Government concurs almost entirely, that the defendant's resulting Total Adjusted Offense Level for the offense should be no lower than 25, that his calculated Criminal History category is I, and that his guideline range would be in Zone D, which can only satisfied by incarceration. See PSR ¶¶ 71, 81 and 155.  As discussed below in part III below , however, the Government disagrees with one respect with Probation, and believes that the defendant is deserving of a upward departure based upon his post-Indictment conduct and/or the fact that his criminal history score undercounts his true criminality.

(E) The Court should consider any pertinent policy statement issued by the Sentencing Commission.  As discussed in part III below, the government believes that there are relevant sentencing guideline factors to be considered in this case.

(F)  Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records.  Here, a guidelines sentence would help prevent such disparities between defendant and similar defendants.

(G) Lastly, the Court should consider the need to provide restitution.  In this matter, restitution is a significant issue, and the defendant should be ordered to pay full restitution, and a final order of forfeiture should entered against the defendant.  See PSR ¶168 and 171.

III.    **SENTENCING GUIDELINE CALCULATIONS**

The United States fully concurs with the PSR's conclusion about the applicable D.C. Guideline provisions for First Degree Fraud-Felony, and disagrees only slightly with its calculation under the U.S.S.G.  Specifically, the Government believes the defendant merits an upward departure under the guidelines based upon conduct and his true criminality.

A.    **Defendant's Federal Offense Level Should be Level 28**

The United States agrees almost entirely with the PSR, but believes that a proper sentencing guideline calculation in this case should include an upward departure based upon the defendant's record and his post-indictment conduct.  The Probation Office has determined that the defendant's total offense level should be level 25.  <u>See</u> PSR ¶ 71.  Probation's analysis includes the base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(2), a sixteen-level enhancement for "loss" of more than $1 million, but less than $2.5 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(D), and a two level enhancement because the offense involved more than 10 victims pursuant to U.S.S.G. §2B1.1(b)(2)(A).  The Government concurs with this analysis. The Government also agrees with Probation that the defendant should not receive any acceptance of responsibility benefit for his last-minute "Alford" plea.  <u>See</u> PSR ¶58.

The Government, however, believes that a level 25 calculation still undercounts the defendant's offense level.  Specifically, the Government believes that the defendant's post-indictment, pre-sentence criminal and contemptuous conduct was so egregious that a three-level enhancement should be added under U.S.S.G. §5K2.0.  It is unquestioned that this Court may impose a three-level enhancement for a defendant's post-indictment, pre-sentence conduct under U.S.S.G. §5K2.0, <u>see</u> <u>U.S. v. Fadavini</u>, 28 F.3d 1236, 1242 (D.C. Cir. 1994) (upholding 3 level upward departure), and that such an imposition is warranted here.

1.    <u>Defendant's post-Indictment conduct is deserving of  additional punishment</u>

The defendant's post-indictment fraudulent (and contemptuous) conduct was immediate, repeated, flagrant, and nearly identical to the same criminal conduct for which he had just been indicted.  The defendant was presented on the Indictment on April 11, 2007, and was released on

his personal recognizance with a general condition that he not commit any violation of law and the special condition that he not buy or sell property without consent of the Court. Despite agreeing to these conditions, as early as mid-May, 2007, the defendant was back committing the same type of fraud for which he was just indicted. Specifically, as presented in the Government's Motion to Revoke Defendant's Release (which has been unsealed), by May 24, 2007, the defendant had met a new victim (David Bernhardt), represented to him that he owned numerous homes that he did not own (including 1256 Florida Ave., NE), executed a sales contract to sell a house to Mr. Bernhardt, and defrauded Mr. Bernhardt out of several thousands of dollars. See Attachment 2 at Exhibit 3 (Affidavit of Postal Inspector Jeremy Wiesel) and attachment B (copy of executed sales contract). That the defendant committed fraud is obvious; he did not own the property, see id. at ¶5, let alone any other property in the District of Columbia. See PSR ¶ 138. That the defendant's conduct was also an intentional affront to this Court is also clear: by May 24th, the defendant had been informed of his release conditions – and warned of the consequences of violation – at least three times (April 11th, April 18th, and May 14th), the last of which was only ten days before he signed the sales contract with Mr. Bernhardt.

Unfortunately, the defendant's flagrant disregard for this Court only grew more egregious. After the defendant signed the sales contract on 1256 Florida Ave., NE with Mr. Bernhard, the defendant convinced Mr. Bernhardt to buy another piece of property, 818 L Street, NE, that the defendant again falsely claimed to own. As the Court may recall, on the morning of June 13, 2007, the defendant appeared at a 9:30 a.m. status hearing before the Court and he was not compliant with his release conditions at that time. After being warned about his non-compliance, the Court specifically addressed the defendant's special condition not to buy or sell

property without permission of the Court: the Court stated that "he [Cowser] knows what his responsibilities are, and he knows that if he steps off that track he'll have a problem." <u>See</u> Attachment 2 at Exhibit 2 at  p.6.  Despite this Court's admonition, later **in the same day** the defendant signed a second sales contract with Mr. Bernhardt to sell him 818 L Street, NE, and defrauded him out of additional monies.  <u>See</u> Attachment 2 at Exhibit 3 at Attachment A (agreement by defendant to sell 818 L Street, NE to Mr. Bernhardt dated June 13, 2007).  A tape of the defendant's conversation with Mr. Bernhardt on September 7, 2007 is instructive as to the defendant's method and intent.  <u>See</u> Attachment 3 (Transcript of conversation between Mr. Bernhardt and the defendant).[1]  The defendant's blatant fraud in the face of this Court's orders demonstrates an utter lack of respect for the Court or any concern over his possible incarceration.

Importantly, the defendant's post-indictment fraud was not limited to the thousands of dollars he fraudulently obtained from Mr. Bernhardt.[2]  The government has learned that defendant, after being indicted, defrauded at least one other investor, Dr. John Slack, of at least $8,536.00 in a similar real estate fraud scheme.  Starting in June 2007, the defendant falsely told Dr. Slack he owned several properties in D.C., signed sales contracts to sell him the properties, and defrauded him of several thousand dollars.  <u>See</u> Attachment 4 (8/31/07 Letter from Dr. Slack to defendant and receipts of monies paid to Cowser).  When Dr. Slack demanded full re-payment from the defendant after he learned the defendant did not own the properties, the defendant sent

---

[1] The government would like to play a copy of the recording to the Court at sentencing if the Court will permit it.

[2] Post-indictment, the government learned that the defendant had defrauded another victim, Nigel Harris, of $17,000 in a similar real estate fraud prior to being indicted (September 2006). <u>See</u> Attachment 2 at Exhibit 3 at ¶ 7.

Dr. Slack a hostile letter and gave him a partial repayment with a $4,500 check, dated September 4, 2007, that subsequently bounced.  <u>See</u> Attachment 5 (letter from defendant to Dr. Slack with copy of returned check).

The defendant's post-indictment criminal conduct was also not limited to real estate fraud, as he committed other fraud and also intentionally passed numerous bad checks on closed accounts or accounts with insufficient funds.  Some of these include the following: passing two bad checks on May 6, 2007 totaling $21,215.40 to Ouirsman Chevrolet which the defendant used to purchase a new Chevy Cavalier (since impounded); passing a bad check on June 15, 2007 for $19,000 to the D.C. Government which the defendant used to create paperwork to help him defraud Mr. Bernhardt; and passing a bad check on September 1, 2007 for $24,303.65 to Darcars of Auth Way in Marlow Heights which the defendant used to purchase a PT Cruiser vehicle (which Darcars has been attempting, unsuccessfully, to impound).  <u>See</u> PSR ¶ 55.

The defendant's conduct thus not only shows a propensity toward fraud, but a total disregard for his victims and his legal responsibilities.  In <u>United States v. Cusack</u>, 66 F. Supp.2d 493, 517-18 (S.D.N.Y. 1999), <u>aff'd</u>, 229 F.3d 344 (2nd Cir. 2000), the court faced a similar defendant who engaged in pervasive fraud and authorized an upward departure under U.S.S.G. §5K2.0.  As the court there recognized:

> Here, in the commission of his offense, the defendant showed a complete, and nearly sociopathic disregard for the impact that his actions would have on others. There was no boundary that the defendant hesitated to cross to carry out the fraud.  . . . [The defendant's conduct] demonstrates to the Court that the defendant is a man without scruples, who would sacrifice any person or institution in the service of his greed. This characteristic is present to a truly appalling degree in the defendant's offense-related conduct.  Although the Court regards this analysis of the defendant's character as sufficient to justify the departure, these same character traits indicate that the defendant is a criminal opportunist with a propensity to commit other crimes. The defendant's total disregard for injuries risked or imposed on others indicates a strong likelihood of

> recidivism. To the extent one is able to predict future behavior based on the offense of conviction and the light that sheds on the defendant's character, it is the Court's judgment that the defendant will likely seize any opportunity presented in the future to engage in fraudulent activity to enrich himself, and in doing so, will not restrain himself from injuring others-even those to whom he owes a special duty of loyalty-if he thinks it will benefit him. The Court regards this as a valid concern for sentencing not already adequately taken into account by the Guidelines and one that independently supports a departure under Section 5K2.0.

Id.  As in that case, Cowser has been committing obvious and repeated fraud, and this Court should impose a three-level enhancement under U.S.S.G. §5K2.0.

      B.    **Defendant's Criminal History Score Understates True Criminality and Likelihood of Future Criminal Conduct**

As the Probation Office has suggested, there is ample reason to upwardly depart in calculating the defendant's criminal history score under U.S.S.G. §4A1.3(a)(1).  See PSR ¶ 173. The Government believes that if this Court determines that a three-level enhancement should not be applied under U.S.S.G. §5K2.0, then this Court should upwardly calculate the defendant's criminal history score to Criminal History Category II because "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. §4A1.3(a)(1).  There are several reasons for this departure

First, the defendant has a long and extensive history of fraud that goes back to the early 1980's, and most of his convictions only became time barred for criminal history point purposes a year before the criminal activity in this case (2004).  Second, the defendant's commission of additional fraud following his Indictment strongly demonstrates that the defendant will continue

to engage in fraudulent behavior even after he is sentenced in this case.[3]  Third, all seven of the
defendant's prior fraud convictions involved passing bad checks, and it appears, as discussed
above, he is still engaging in this conduct.  Fourth, the defendant's brazen violation of this
Court's release conditions, including once on the very day he was warned to obey his release
conditions, indicates that the defendant has not, and will not, comply with the criminal law.
Lastly, there is a substantial risk that this defendant will continue his fraudulent ways because he
has not even accepted responsibility for the million dollar-plus fraud he has committed in this
case.  As such, the Government requests that this Court upwardly calculate the defendant's
criminal history if it chooses not to impose a departure under U.S.S.G. §5K2.0.

C.      **Final Guideline Calculation**

As stated above, the United States believes that the defendant's federal guideline
calculation is either level 28, criminal history category I, or level 25, criminal history category II.
In the first case, the sentencing range for the defendant will be between 78 and 97 months
incarceration (Zone D), and, in the second case, the sentencing range will be between 63 and 78
months incarceration (Zone D).[4]  As stated above, the Government concurs with Probation as to
the D.C. Sentencing Guideline calculation of 1-12 months for each D.C. Code offense.

---

[3] Courts have upheld upward departures under U.S.S.G. §4A1.3(a) based upon a defendant's
uncharged post-indictment conduct, see United States v. Tjaden, 473 F.3d 877, 877 (8th Cir.
2007) (upholding upward departure under §4A1.3(a) based upon defendant's new fraudulent
activity after plea was entered but before sentencing), as well as their "unprosecuted offenses."
United States v. DeAngelis, 206 Fed. Appx. 873, 880 (11th Cir. 2006) (upholding departure under
§4A1.3(a) based in part upon criminal offenses that were not prosecuted).

[4] Under the guideline calculated in the PSR, the defendant's guideline range would be
between 57 and 71 months incarceration (Zone D).  See PSR ¶ 142.

III.     **CONCLUSION**

The Government believes the defendant is deserving of a significant term of incarceration.  His conduct in this case demonstrates that he is a fraudster whose conduct will not be denied by any threat of incarceration.  His conduct in the past two years has affected numerous innocent homeowners, title insurance companies, investors, mortgage companies, and financial institutions in the District of Columbia and elsewhere.  His actions have directly caused at least five civil suits to be filed, and it is likely that several more will be filed in order to sort out the various ownership and liability issues that the defendant has caused.  The defendant's criminal history and lengthy arrest record (25 arrests, almost all for fraud) further demonstrates that he will not stop anytime soon.[5]

The defendant's callousness is further demonstrated by his choice of victims.  He stole multiple homes from underneath several District residents, two of whom were of advanced years (Edward Meredith, Sr. and Lorraine Williams), and one of whom who died before he could obtain justice (Mr. Meredith).[6]  As the statement of Ms. Williams' demonstrates, the defendant's conduct created significant trauma to the victims.  In fact, the defendant directly caused her to suffer significant medical, mental, and financial hardships, and lose numerous family heirlooms and antiques.[7]  See Attachment 1 at p. 3-4.  The fact that the defendant then tried to sell the

---

[5] The defendant's arrest record is relevant to determine the overall sentence and departure under U.S.S.G. §5K2.0, but cannot form the basis of an upward departure under U.S.S.G. §4A1.3(a)(1).  See U.S.S.G. §4A1.3(a)(3).

[6] Ms. Williams, Mr. Lonnell Glover, and the heirs of Mr. Meredith, Sr. all had to hire attorneys and file civil suits against the defendant in order to clear their titles.  The defendant failed to appear or respond to any of their suits.

[7] Ms. Williams' property was removed by one of the buyers (Mr. Coward) who believed he had purchased the property from the defendant.  The defendant, claiming to own the property,

properties multiple times to any and all buyers only compounded this loss.  In the case of 1321 West Virginia Ave., NE, the defendant attempted to sell the property at least three times, and then actually sold (and closed) on the property to two separate buyers in less than a single week in February 2006.  The defendant of course did not stop with the properties listed in the Indictment, as he attempted to sell properties he did not own even after he was indicted.

The fact that the defendant continued with his various real estate fraud schemes and efforts to pass bad checks to obtain new cars after he was indicted should not be surprising.  In a word, this defendant is incorrigible and will only stop committing fraud while he is incarcerated. The defendant's inability to accept responsibility in this case firmly demonstrates that he will continue his fraudulent activities in the future.  Given this reality, and the defendant's significant crimes here, a long term of incarceration is warranted.  While the Government is aware of the defendant's age and numerous medical concerns, it has not been suggested or demonstrated that they cannot be properly addressed and treated by the Bureau of Prisons.

Taking into account all of these factors, the Government believes that the defendant should be incarcerated for a total period of 78 months.  According to the Government's calculation, this would be the low end of the applicable guideline range (level 28, criminal history category I), with time for the D.C. Code charges to be sentenced concurrently.  To the extend that the Court wished to use the Government's alternative guideline calculation (level 25,

---

told Mr. Coward that he could remove and throw out all the property inside 1251 Orren Street, NE.  Unbeknownst to Mr. Coward, the defendant had fraudulently taken the property from Ms. Williams, and also had sold the same property to another buyer (Mr. Edwards) after he had entered an agreement to sell it to Mr. Coward.

criminal history category II), or Probation's guideline range (level 25, criminal history I) a 78

month term would still be justified.[8]

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        UNITED STATES ATTORNEY


                                        _____/s/_____
                                        TEJPAL S. CHAWLA
                                        DANIEL BUTLER
                                        Assistant United States Attorneys
                                        Fraud & Public Corruption Section
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 353-2442

---

[8]    If this Court used Probation's range of 57-71 months, a 78 month sentence is still appropriate.  The Court could properly punish the defendant for his separate D.C. felony charges by sentencing him to seven consecutive months incarceration on those charges, and then sentence him to a 71 month guideline sentence for the wire fraud offenses.

Attachment 1

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF COLUMBIA

Declaration of Victim Losses

United States of America          )
                                   )
          vs.                      )    Criminal No.: 07-CR-83
                                   )
George Cowser                      )

I, <u>Lorraine Williams</u>, residing at <u>219 Orren St., NE</u>
in the city (or county) of <u>Washington</u>, in the state of <u>D.C.</u>, am a
victim in the above referenced case and I believe that I am entitled to restitution in the total
amount of $ <u>119,000</u>

My specific losses as a result of this offense are summarized as follows:

Mr. Cowser transferred title to my house and stole my property without my
knowledge or consent. I was awarded $119,000 in damages in my civil case
against Mr. Cowser ($19,000 for lost property and $100,000 in punitive damages).
I have not collected any of that judgment. See attached statement.

_____ I have been compensated by insurance or another source with respect to all or a
portion of my losses in the amount of $ _____. The name and address of my insurance
company and the claim number for this loss are as follows:

I declare, under penalty of perjury, that the foregoing is true and correct.

_____
(Signature)

Executed on the <u>29th</u> day
of <u>November</u>, 20 <u>07</u>.

ELIZABETH TURNER
Notary Public, District of Columbia
My Commission Expires November 30, 2010

11/30/07 FRI 16:50 FAX 202 434 6584    AARP    @003

VICTIM IMPACT STATEMENT for George Cowser 07-CR-83

See attached statement.

Lorraine Williams
(PRINT NAME)

Lorraine Williams
(SIGNATURE)

Nov 29th 07
(DATE)

# LORRAINE WILLIAMS VICTIM IMPACT STATEMENT

My name is Lorraine Williams and I am writing this statement to tell you how I was affected by the actions of George Cowser. I purchased a single family home located at 1219 Orren Street, N.E. Washington, D.C. 20002 around December 30, 1976. I planned to move into the property with my disabled daughter as soon as I was able to make the place wheelchair accessible. At the time I was living at 1636 Rosedale Street, N.E. Washington, D.C. 20002.

On December 6, 2005, I was hospitalized with a heart attack, and was still paying the property taxes, mortgage and insurance on the Orren Street property. Shortly after my release from the hospital, my grandson happened to drive by the property and saw my personal property being moved out of the Orren Street property and telephoned me.

Upon my return from paying my real estate taxes, I went over to the Orren Street house and I saw that the contents of the house were removed. After seeing this, I went to the Recorder of Deeds and found out that a George A. Cowser was listed as the owner of 1219 Orren Street, N.E. I went to the house and I spoke with a light-skinned man and he told me that it was his house now. It was around April of 2006 when this incident happened. After George Cowser illegally received the property from me, I found out that Mr. Cowser then sold the Orren Street house to a Mr. Edwards for $60,000.

As a result of this incident, I have lost all of my furniture, most of which were antiques. Some of which were antiques from my mother. The house was totally stripped of furniture and fixtures. Mr. Cowser left only the kitchen sink remaining in the house. I am retired and live on a fixed income, and cannot afford to replace the items Mr. Cowser took. Even if I were to be able to afford new furniture, I cannot replace the emotional/sentimental value attached to the antiques that were taken from me. In addition, Mr. Cowser removed all the photos I had on the walls; these were photos of family members, some of whom have passed away. He also removed other personal items from the house, which are irreplaceable, including my grandson's trophies and ribbons from playing basketball and other sports.

After finding out about Mr. Cowser I went to Legal Counsel for the Elderly and they filed a civil case against Mr. Cowser on my behalf. In that case I was represented by James Sugarman and I was awarded $119,000 in damages. Of this amount, $19,000 was for the lost furniture, and $100,000 was for punitive damages. At the present time, I have not received any money from this judgment.

In 2006, I was hospitalized 5 times because of my failing health, and in 2007, I was hospitalized 4 times. Around August 14, 2007, I had an operation. Because of the incident involving the Orren Street house, I am under an extreme amount of stress and anxiety. As a result of the additional stress put upon me my heart condition has become aggravated. While I was hospitalized again in late August 2007, I thought that I was not going to make it back home. To help me, I prayed a lot.

The Federal Bureau of Investigations ("FBI") came to speak with me. I remember it was a lady and a man agent. During this time, James Sugarman kept in contact with me and kept me updated. I have asked the Lord to take away my anger at Mr. Cowser and what he did to me. At one time I was 234 pounds, but because of my ordeal I now weigh 164 pounds. Up until just a few weeks ago, I felt that I lived with a heavy feeling day and night, and it has just been a few weeks ago that the feeling of anger has left me. I have also suffered from depression. As a result of my prayers I believe that my anger and feelings of heaviness about this situation has eased, although I still become tense and emotional when I think of or talk about what happened to me. I desperately want to move on.

Because of all the stress surrounding the loss of my house and its effect on my health, I have been to "hell and back." I have trouble falling asleep and usually sleep for only 2-3 hours a nigh. I do not have any health insurance and every prescription that I must take, I pay in cash. To keep my mental capacity, I read a lot and pray to God to help me get through this test that he has me going through. I have owned the Orren Street house for over 40 years and have worked hard for everything that I have. Mr. Cowser's actions left me feeling stripped, worse than being naked. He has negatively affected my physical, emotional and financial well being.

_Alliene Williams_
Signature

_Earphine Williams_
Print

_11-28-07_
Date

Attachment 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        :       CRIM. No. 07-83 (JR)

v.                              :                                    RECEIVED

                                :                                    SEP 1 3 2007

GEORGE A. COWSER                :       EX PARTE, UNDER SEAL

                                        NANCY MAYER WHITTINGTON, CLERK
                                        U.S. DISTRICT COURT

**GOVERNMENT'S EX PARTE, UNDER SEAL, MOTION TO REVOKE DEFENDANT'S**
**RELEASE, FOR ISSUANCE OF A BENCH WARRANT FOR HIS ARREST, FOR HIS**
**DETENTION WITHOUT BOND, AND FOR EXPEDITED REVIEW BY THIS COURT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves, <u>ex parte</u> and under seal, to revoke defendant's release in the above-referenced matter. The government also seeks expedited review of this motion by the Court so that a bench warrant may be issued forthwith. The defendant, George A. Cowser ("COWSER"), is presently on his personal recognizance, and has been ordered by the Court to obey specific conditions during his release pending trial. The Government has recently received evidence that the defendant COWSER has violated his conditions of release, and is continuing to harm the public by engaging in fraudulent criminal activity. Because the attached affidavit relates to ongoing law enforcement investigations, the government requests that the instant pleading and attachments also be placed under seal. For the reasons discussed more fully below, the government requests that defendant's release be revoked and that he be detained without bond pending trial. In support of this motion, the government states as follows:

I.  Factual Summary

On March 23, 2007, defendant COWSER was indicted on four criminal counts of mail fraud in violation of 18 U.S.C. § 1341, and three counts of First Degree Fraud-Felony, in violation of

22 D.C. Code §§3221(a) and 3222(a)(1). On April 11, 2007, COWSER was arrested and arraigned before Magistrate Judge Deborah A. Robinson. Judge Robinson released COWSER on his personal recognizance with several conditions, including the special condition that he refrain from buying, selling or listing real estate in the District of Columbia without permission of the Court. COWSER orally acknowledged the request on April 11, 2007, and accepted these conditions by signing his release order. See Exhibit 1. In his signed release, the Court ordered COWSER to obey a number of conditions while on release in this case, including the following conditions:

(1)    report twice a week by phone to D.C. Pretrial Services Agency;

(2)    refrain from listing, buying, or selling real estate within the District of Columbia,

        unless permitted by the Court; and

(3)    not to commit a Federal, State or local crime during the period of his release.

COWER's case was subsequently assigned to this Court. In the status hearings on April 18, 2007, May 14, 2007, June 13, 2007 and July 2, 2007, the defendant was ordered to maintain compliance with his release conditions. On June 11, 2007, the Pretrial Services Agency sent a memorandum to the Court alerting it that COWSER had twice failed to comply with his release condition to maintain contact with Pretrial Services. On June 13, 2007, the Government alerted the Court to this violation and asked "that the defendant, on the record, be admonished either to come in person or to comply, in addition to reminding him of his requirement that he not buy, sell, or list any property in the District of Columbia without the Court's consent. That is a condition of his current conditions of release." See Exhibit 2 at p. 6. The Court thereafter stated:

Well, I think you've just done that, and I'll save my admonishment for the next opportunity. We have to rachet something up with something. … The PSA says there's no information available regarding his compliance with his condition to refrain from listing, buying, or

selling real estate. If you parse that sentence, it's a little hard to figure out what it means. We don't know what he's not doing, is what they're saying. And I'm not sure its knowable, except with a degree of surveillance that I don't think has been imposed on this defendant. *So he knows what his responsibilities are, and he knows that if he steps off that track, he'll have a problem.* So I think that will suffice for today.

Id. (Emphasis added)

As stated more fully in the attached affidavit, the Government has recently became aware that the Defendant Cowser has violated his conditions of release by (1) engaging in fraudulent criminal activity and (2) selling and/or listing real estate in the District of Columbia without permission of the Court. See Exhibit 3, Affidavit of Postal Inspector Jeremy Wiesel.

## II.  Discussion

Defendant COWSER has been fully aware of this Court's Order relating to his conditions of release, which included the specific conditions: 1) to report regularly to Pretrial Services (PSA); 2) not to engage in criminal activity and 3) to refrain from buying, selling, or listing real estate in the District of Columbia without permission of the Court. As the Court is already aware, defendant COWSER is no stranger to the judicial system and did not comply with the first condition to regularly report to PSA. Defendant was warned by PSA, the Court, and the government that his noncompliance was unacceptable and that he was obligated to fulfill each and every one of his conditions of release. The attached affidavit demonstrates that COWSER's contempt of the Court's release Order is even more serious and extensive than has been previously known: since at least May, 2007, the defendant has been fraudulently selling real estate in the District of Columbia while on release in this case. Perhaps not surprisingly, the new evidence against defendant COWSER summarized in the attached affidavit demonstrates the same fraudulent *modus operandi* for which COWSER was indicted: since his release, defendant COWSER has been selling real estate in the

District of Columbia that he does not own, has presented false and forged documents to support his bogus claims of ownership, defrauded at least one victim into paying COWSER thousands of dollars to purchase real estate, and in at least one instance, attempted to sell property (1256 Florida Ave., NE), that he had already sold to a different victim.

Defendant COWSER's actions constitute (1) felony fraud under 22 D.C. Code § 3221, (2) violations of two of this Court's release conditions under 18 U.S.C. § 3814(a), and (3) chargeable acts of contempt of court under 18 U.S.C. §401(c). The fact that the defendant has engaged in this felonious activity despite the serious charges pending against him and this Court's multiple warnings demonstrates that his present release pending trial is creating a significant danger to the community.[1] There can be little doubt that the defendant's violations are intentional and knowing violations of this Court's orders: not only did COWSER sign a release Order which unambiguously states: "[y]ou are instructed that any violation of a condition of release may result in revocation of release, pretrial detention or contempt," see Exhibit 4, but this Court orally told COWSER that there would be serious consequences if he continued to violate his conditions of release. See Exhibit 2.

Upon motion by the government that a defendant has violated his conditions of release, this Court is empowered to "issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer . . . for a proceeding in accordance with this section." 18 U.S.C. §3148(b). Under these circumstances the government asks this Court to immediately revoke defendant COWSER's conditions of release, and execute a bench warrant for

---

[1] Under 18 U.S.C. §3814(b), "[I]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."

4

the defendant's arrest forthwith. After the defendant is arrested, the government will promptly alert the Court and request that the Court schedule a revocation hearing as soon as possible.

### III. Conclusion

WHEREFORE, the government respectfully requests that this motion be granted. That is, the government requests that defendant's conditions of release be revoked, that the Court issue a bench warrant for his arrest and that, upon defendant's arrest, he be held without bond pending his revocation hearing (and trial).

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

TEIPAL S. CHAWLA
DANIEL P. BUTLER
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, DC 20001
(202) 353-2442 and 353-9431

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :    CRIM. No. 07-83 (JR)

            v.                    :

GEORGE A. COWSER                  :    EX PARTE, UNDER SEAL

## ORDER

Based on the representations in the Government's Ex Parte, Under Seal Motion to Revoke Defendant's Release, for Issuance of a Bench Warrant for his Arrest, and for his Detention Without Bond Pending Trial and for Expedited Review by this Court, this Court makes the following:

## FINDINGS OF FACT

1. Since April 11, 2007, this Court has released the defendant on his personal recognizance pending his trial in the above matter. While he was on release, this Court ordered the defendant to obey specific conditions while he was on release, which included that he refrain from listing, buying, or selling real estate within the District of Columbia unless permitted by the Court, and that he not violate any Federal, state or local law.

2. Pursuant to the defendant's release on his personal recognizance, he was also warned that "any violation of a condition of release may result in revocation of release, pretrial detention, or contempt."

3. The United States has presented a sworn affidavit and documentary evidence in support of its motion which indicates the defendant is in violation of at least two of his conditions of release. Based upon the affidavit and the Government's motion, there is clear and convincing evidence to believe that the defendant has violated a condition of his release by buying, selling or listing real

estate in the District of Columbia without permission of the Court while he has been on release. In addition, based upon the affidavit and the Government's motion, there is probable cause to believe that the defendant has committed a Federal, State, or local crimes while he was on release in this case, to wit felony fraud in violation of 22 D.C. Code §§ 3221 and 3222;

4.    Defendant COWSER lives a 1140 Gales Street, NE, Washington, D.C., his PDID number is 277-028, his FBI#456887P1, and he is a black male, dark complexion, and approximately 61 years of age.

5.    There is a compelling governmental interest in sealing this motion and Order, for the reasons stated in the government's motion to seal and the resulting order.

Based on the above Findings of Fact, it is this _____ day of September, 2007, hereby

**ORDERED** that the prior order of the Court on July 2, 2007, ordering the release of George A. Cowser, is hereby revoked and a bench warrant shall be issued for the arrest of George A. Cowser.

It is hereby **FURTHER ORDERED** that, upon his arrest, defendant shall be detained without bond while pending a revocation hearing in this case.

It is hereby **FURTHER ORDERED** that the Government's Motion and this Order shall be filed under seal in the Criminal Clerk's office until further order of this Court.

_____
JAMES ROBERTSON
UNITED STATES DISTRICT COURT JUDGE

2

Exhibit 1

United States of America

v.

George Cowser

Case No. CR-07-83

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**YOU ARE RELEASED ON THE FOLLOWING ADDITIONAL CONDITIONS INDICATED BELOW:**

**PERSONAL PROMISE**

☒ **PERSONAL RECOGNIZANCE.** Your personal recognizance, provided that you promise to appear at all scheduled hearings, trials, or otherwise as required by the Court.

☐ **UNSECURED APPEARANCE BOND.** Your personal unsecured appearance bond, to be forfeited should you fail to appear as required by the Court, secured by a deposit, such deposit to be returned when the Court determines you have performed the conditions of your release. You will deposit in the registry of the Court ___%.

☐ **CASH BOND.** Upon execution of appearance bond, to be forfeited should you fail to appear as required by the Court, secured by a deposit, such deposit to be returned when the Court determines you have performed the conditions of your release. You will deposit in the registry of the Court ___%.

☐ **SURETY BOND.** Upon execution of appearance bond with approved surety.

**YOU ARE HEREBY RELEASED ON THE CONDITIONS INDICATED BELOW:**

☒ **1) SUPERVISORY CUSTODY**
You hereby agree to be placed in the custody of _____, who agrees (a), to supervise you in accordance with the conditions below, (b), to use every effort to assure your appearance at all scheduled hearings, trials, or otherwise, and (c), to notify the D.C. Pretrial Services Agency immediately in the event you violate any condition of release or disappear. Agency telephone ___ 442-1000

**SIGNATURE OF CUSTODIAN** ▼

Custodian's name

Custodian's address

Custodian's phone no.

☒ **2) YOU ARE TO REPORT** to ☒ weekly ☐ other-specify **2 Tues** **Mon.** in person ☒ by phone ☐ TO **Pretrial Above**

☒ **3) YOU ARE TO LIVE** at _____ address

**THE D.C. PRETRIAL SERVICES AGENCY AT 442-1000.**
Your attorney, whose name and address is shown below.

☐ **4a) YOU ARE TO WORK** with _____ name and relationship to defendant

☐ by obtaining a job within ___ days and reporting it to the D.C. Pretrial Services Agency at 442-1000.

☐ by maintaining your job as _____ Employer's name and address

Employer's phone no.

☐ **4b) YOU ARE TO STUDY** by enrolling in school at _____ name and address

phone no.

at _____ address

being in at night by ___ P.M.

☐ by maintaining your student status at _____ name and address

phone no.

☒ **5) YOU ARE TO STAY** away from the complaining witness.     ☒ Within the D.C. area.

☒ **6) NARCOTICS** Refrain from listing, busing or selling any illegal substance within

☒ **7) OTHER CONDITION** D.C. unless permitted by the Court.

☒ **8) REARREST** Any rearrest on probable cause for any subsequent offense may result in revoking your present bond and setting it an ___

You are instructed that any violation of a condition of release may result in revocation of release, pretrial detention or contempt. If you willfully fail to appear as required, you will be subject to prosecution and if convicted, the maximum penalties are indicated on the reverse side. Furthermore, your release is subject to the terms and conditions contained on the reverse side which are incorporated in and made a part of this order, which by your signature below you certify you have read and understand.

**NEXT DUE BACK** in Courtroom ___ at ___ AM on ___ or when notified and you must appear at all subsequent continued dates.
You must also appear ___

I understand the penalties which may be imposed on me for willful failure to appear or for violation of any condition of release and agree to comply with the conditions of my release and to appear as required.

**DEFENDANT'S SIGNATURE** ▶ _George C. Cowser_

**WITNESSED BY** _(title and agency)_

**IMPORTANT:** YOU ARE TO NOTIFY IMMEDIATELY THE D.C. PRETRIAL SERVICES AGENCY, 500 INDIANA AVE., N.W., FIRST FLOOR, TELEPHONE NUMBER 442-1000, OF ANY CHANGE OF ADDRESS, EMPLOYMENT, OR CHANGE IN STATUS OF ANY RELEASE CONDITIONS.

**YOUR ATTORNEY** Ms. Peterson/Wright
name
address D.C.P.S.A
phone no.

Date **7/11/07**

**SO ORDERED**

Signature of Judge

WHITE—TO COURT PAPERS
BLUE—TO JUDGE
GREEN—TO D.C. PRETRIAL SERVICES AGENCY
CANARY—TO DEFENSE ATTORNEY
PINK—TO U.S. ATTORNEY
GOLDENROD—TO DEFENDANT

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA                    :          Criminal No. 07-0083

v.                                          :          June 13, 2007

GEORGE ALTON COWSER,                        :

          Defendant                         :          9:30 a.m.

:  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          TEJPAL S. CHAWLA, ESQUIRE
                             UNITED STATES ATTORNEY'S OFFICE
                             555 Fourth Street, NW
                             Washington, D.C.  20530

For the Defendant:           CARLOS J. VANEGAS, ESQUIRE
                             FEDERAL PUBLIC DEFENDER
                             625 Indiana Avenue, NW
                             Suite 550
                             Washington, DC 20004

Court Reporter:              REBECCA STONESTREET, RPR, CRR
                             Official Court Reporter
                             Room 6415, U.S. Courthouse
                             Washington, D.C. 20001
                             (202) 354-3249

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

P R O C E E D I N G S

COURTROOM DEPUTY:  This is Criminal Number 07-0083,

United States of America versus George Alton Cowser.  Mr. Chawla

present for the government, Mr. Vanegas present for the

defendant.  The defendant is present in the courtroom.

THE COURT:  Mr. Cowser is charged in a seven-count

indictment with mail fraud and first degree fraud.  When we were

here the last time in May, we did in this case what I just did

in the Greene case, which is to toll the Speedy Trial Act clock

until today because Mr. Vanegas was still waiting on discovery,

trying to track down materials from a related civil proceeding

in Superior Court.  At the time, Mr. Vanegas thought we might be

headed toward trial.

Where do we stand today, Mr. Vanegas?

MR. VANEGAS:  Your Honor, I have made some progress in

tracking down the materials from the Superior Court which are

ancillary to this case.

With respect to the discovery in the criminal case, I

just recently received it, received it on Monday evening, and so

I'm still in a situation where I have to review it and look it

over and also speak to Mr. Cowser about that.

THE COURT:  You were here the middle of May, and you

just got the discovery on Monday of this week?

MR. VANEGAS:  Yes, Your Honor.

THE COURT:  Well, what do you want me to do?

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

2

1    MR. VANEGAS:  Your Honor, my request would be if we can

2    come back on Monday, July 2nd, and at that point -- I believe

3    this case is going to head towards trial, but --

4        THE COURT:  Then we might as well find a trial date.

5        MR. VANEGAS:  That's fine, Your Honor.

6        THE COURT:  Because if we don't, it sounds to me like

7    we're just wandering around in the woods here.

8        MR. VANEGAS:  Your Honor, mid-September, if the Court

9    what's your earliest available trial date, Mr. Vanegas?

10   can accommodate us.

11       MR. CHAWLA:  That should be fine for the government,

12   Your Honor.

13       THE COURT:  Well, we can either try this case the week

14   of September the 10th or the week of September the 24th.  Take

15   your pick.

16       MR. VANEGAS:  The 24th, Your Honor.

17       THE COURT:  Why did I know you would do that?

18       MR. CHAWLA:  The 24th is fine for the government,

19   Your Honor.

20       THE COURT:  Trial is set for September 24th at

21   9:30 a.m.

22       Now let's talk about what happens between now and then.

23   You want another status?

24       MR. VANEGAS:  Yes, Your Honor.

25       THE COURT:  And you said July 2nd?

1    MR. VANEGAS: Yes.

2    THE COURT: Okay, we can do that. 10:00 o'clock?

3 Let's call it 9:30. We have another matter at 9:30, but if this

4 is a quick status, we'll squeeze you in first.

5    MR. VANEGAS: That's fine, Your Honor. Thank you.

6    THE COURT: 9:30, July 2nd.

7    Now, we're not going to do this just because we're

8 going to come back and say the same thing to each other. I

9 mean, by July 2nd I will expect that you will have had some

10 serious opportunity to evaluate where we stand in this case,

11 whether motions will be filed and so forth.

12    Let's talk about the speedy trial clock, which has been

13 tolled only until today.

14    MR. VANEGAS: Yes, Your Honor. I have spoken to

15 Mr. Cowser. I indicated to him because I had just recently

16 received the discovery that I needed time to review it, and also

17 to be able to meet with him.

18    Because of his medical schedule - that is that he goes

19 to dialysis every Tuesday and Thursday - that leaves those three

20 days in which I can work with him.

21    But I believe that the interests of justice are best

22 served in allowing me this additional time to review the

23 discovery, to speak with Mr. Cowser, and just to be able to

24 inform the Court what motions we will be filing.

25    So I think that would be a sufficient basis, at least

4

1    from our end, and he's willing to toll the speedy trial clock as

2    of today until we return on July 2nd.

3         THE COURT:  Well, he's not locked up, so we're not

4    worried about that.  It has indeed been difficult to schedule

5    these because of Mr. Cowser's medical condition, you have only

6    received discovery early this week.  I have to say the magic

7    words:  The interests of justice favor accepting the defendant's

8    waiver and tolling the speedy trial clock between now and

9    July 2nd, and outweigh the interests of the defendant's speedy

10   trial rights and the rights of the public to a speedy trial.

11        Does that satisfy the magic words?

12        MR. VANEGAS:  I believe so, yes, Your Honor.

13        THE COURT:  All right.  Thank you.

14        MR. VANEGAS:  Thank you, Your Honor.

15        THE COURT:  All right.  Thank you.  Counsel are

16   excused.

17        MR. CHAWLA:  Your Honor, there actually is one matter.

18   I'm sorry.

19        THE COURT:  Yes.

20        MR. CHAWLA:  My understanding is that Mr. Cowser is not

21   in compliance with his conditions of release.

22        THE COURT:  Oh?

23        MR. CHAWLA:  He has not been contacting pretrial, as

24   he's required to do.  That was in the most recent report that I

25   received, and let me get the date of that report.  June 11th was

Rebecca Stonestreet                (202) 354-3249                kingreporter2@verizon.net

6

1    the Notice of Supervisory Action report that I received that he

2    had not been checking in, that he had missed at least twice

3    since he has been required to report.

4         And I would ask that the defendant, on the record, be

5    admonished either to come in person or to comply, in addition to

6    reminding him of his requirement that he not buy, sell, or list

7    any property in the District of Columbia without the Court's

8    consent. That is a condition of his current conditions of

9    release.

10         THE COURT:  Well, I think you've just done that, and

11    I'll save my admonishment for the next opportunity.  We have to

12    ratchet something up with something.  The Pretrial Services

13    Agency recommended no change in his release conditions, and has

14    already warned the defendant in regard to his missed check-ins.

15         The PSA says there's no information available regarding

16    his compliance with his condition to refrain from listing,

17    buying, or selling real estate.  If you parse that sentence,

18    it's a little hard to figure out what it means.  We don't know

19    what he's not doing, is what they're saying.  And I'm not sure

20    if that is knowable, except with a degree of surveillance that I

21    don't think has been imposed on this defendant.

22         So he knows what his responsibilities are, and he knows

23    that if he steps off that track, he'll have a problem.  So I

24    think that will suffice for today.  Thank you, counsel.

25         MR. VANEGAS:  Thank you, Your Honor.

1    (Proceedings adjourned at 10:00 a.m.)

2

3

4

5    CERTIFICATE OF OFFICIAL COURT REPORTER

6

7        I, Rebecca Stonestreet, certify that the foregoing is a

8    correct transcript from the record of proceedings in the

9    above-entitled matter.

10

11   _____

12   SIGNATURE OF COURT REPORTER         DATE

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 3

# AFFIDAVIT IN SUPPORT OF MOTION TO REVOKE DEFENDANT'S RELEASE AND FOR ISSUANCE OF AN ARREST WARRANT

I, JEREMY T. WIESEL, United States Postal Inspector, United States Postal Inspection Service, Washington Division, (hereinafter "affiant"), having been duly sworn, hereby depose and state as follows:

## I. OBJECTIVE

This affidavit is presented in support of a motion to revoke defendant's release and for issuance of a bench warrant for the arrest of defendant George Alton Cowser (hereinafter "COWSER").

## II. CREDENTIALS

The affiant is a United States Postal Inspector with the United States Postal Inspection Service, Washington Division, with federal law enforcement powers. I have been employed with the Postal Inspection Service for approximately three and a half years, and I am currently assigned to the District Fraud Focus Team at the United States Postal Inspection Service's Washington, D.C., office. My duties include, but are not limited to, the investigation of alleged violations of federal criminal statutes which involve the United States Postal Service and the preparation, presentation and service of criminal complaints, arrest and search warrants.

## III. SOURCE OF EVIDENCE

Affiant is familiar with the facts and circumstances of this investigation. All relevant events described herein occurred in the District of Columbia. The information contained in this affidavit is based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals including review of documents and videos related to this investigation, communications with others who have personal knowledge of the events

and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a motion to revoke the defendant's release, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the defendant named herein has violated his conditions of release and the federal and local statutes set forth immediately below.

## IV. RELEVANT STATUTES

Title 18, United State Code, § 3148(a) provides, in relevant part, that:

A person who has been released under §3142 of this title, and who has violated a condition of this release, is subject to a revocation of release, and order of detention, and a prosecution for contempt of court.

Title 18, United State Code, § 401 provides, in relevant part, that:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

Title 22, D.C. Code, § 3221 provides, in relevant part, that:

*Fraud in the first degree.* - A person commits the offense of fraud in the first degree if that person engages in a scheme or systematic course of conduct with intent to defraud or to obtain property of another by false or fraudulent pretense, representation, or promise and thereby obtains property of another or causes another to lose property. ...

*False promise as to future performance.*- Fraud may be committed by means of false promise as to future performance which the accused does not intend to perform or knows will not be performed. An intent or knowledge shall not be established by the fact alone that one such promise was not performed.

Title 22 D.C. Code §3222 provides for felony punishment if the value of the property or money taken

exceeds $250.

## V. FACTUAL BACKGROUND

1. On March 23, 2007, COWSER was indicted on four criminal counts of mail fraud in violation of 18 U.S.C. § 1341, and three counts of Firs Degree Fraud-Felony, in violation of 22 D.C. Code §§3221(a) and 3222(a)(1). Since his arrest on April 11, 2007, COWSER has been on release in this case and was ordered by the Court to obey the following conditions:

    (1)    Report twice a week to by phone to D.C. Pretrial Services Agency;

    (2)    Refrain from listing, buying, or selling real estate within the District of Columbia, unless permitted by the Court; and

    (3)    not to commit a Federal, State or local crime during the period of his release.

COWSER acknowledged these court-ordered conditions by signing his release form.

2. Recently, on or about September 5, 2007, the Government was contacted by David Bernhardt (hereinafter ("W1"). W1 alerted the Government that he knew the defendant COWSER, and that COWSER was presently selling him real property in the District of Columbia. W1 reported that COWSER claimed to own multiple properties in the District of Columbia, including 818 L Street, NE and 1256 Florida Ave., NE. W1 stated that COWSER was actively attempting to sell these and other properties. W1 reported that he had signed agreements with COWSER to buy 818 L Street, N.E. and 1256 Florida Ave., NE from Cowser in May and June of 2007, and that he had paid COWSER over $7,000 in earnest monies to purchase these properties. W1 stated that COWSER was anxious about selling the properties as quickly as possible. W1 also reported to the affiant that on September 5, 2007 that COWSER offered to close on the 818 L Street, NE property on September 7, 2007 if W1 paid COWSER $10,000.

3. W1 produced to the affiant signed contracts between W1 and COWSER relating to the sale and purchase of 818 L Street, N.E. and 1256 Florida Ave., NE. The agreement that relates to the sale of 818 L Street, NE is dated June 13, 2007 and is entitled "Agreement to Sell Personal Property." See Attachment A. In that agreement COWSER represented to W1 that he "has good, marketable, and legal title to the property and full authority to sell the property. Seller also represents that the property is sold free and clear of all liens, indebtedness, or liabilities." Id. at ¶4. The agreement relating to the sale of 1256 Florida Ave., NE is dated May 24, 2007 and is entitled "Offer to Purchase Real Estate." See Attachment B.

4. W1 reported that COWSER showed it numerous documents relating to 1256 Florida Ave., NE which COWSER claimed was proof that he owned the property. W1 stated that COWSER presented him a copy of a document that appeared to be a notarized deed dated June 27, 2007, with a recordation mark from the D.C. Recorder of Deeds that purportedly transferred title in 1256 Florida Ave., NE from Joseph M. Jenifer to COWSER. See Attachment C. COWSER told W1 that the deed proved that he was the owner of 1256 Florida Ave., NE. W1 reported that he investigated the document number at the bottom of Attachment C at the office of D.C. Recorder of Deeds. W1 stated that the Recorder of Deeds informed him that Attachment C had never been recorded, and that the document number on the deed related to a different deed that was recorded in 2002, and that that deed did not mention COWSER. The Recorder of Deeds' Office also informed W1 that COWSER was not listed as the owner of the property. W1 reported that he confronted COWSER about this inconsistency. W1 stated that COWSER acknowledged the discrepancy, but claimed to W1 that someone at the Recorder of Deeds must have made a mistake. All information provided by W1 has, to date, proven to be true and accurate regarding this matter.

4

5. The affiant has reviewed the current D.C. government property records for 1256 Florida Ave., NE and 818 L Street, NE. There is no record that COWSER owns either property. The records indicate that Mr. Joseph M. Jenifer ("JENIFER") is the present and true owner of 1256 Florida Ave., NE for at least the past year, and that the listed true owner of 818 L Street, NE is Ms. Regina Jefferson ("JEFFERSON"). Investigators attempted to contact JENIFER who lives in the State of Georgia, and spoke with JENIFER's wife. JENIFER's wife stated that they owned the property, and that she did not believe they had sold the property, but would speak with JENIFER at his office to confirm her belief. JENIFER's wife called the investigators back and stated that she had just spoken with JENIFER who confirmed to her that JENIFER remained the true and present owner of 1256 Florida Ave., NE, that they did not know COWSER, and that they did not sell the property, nor give any authority to sell the property to COWSER on their behalf.

6. Investigators also spoke with JEFFERSON, who was the listed owner of 818 L Street, NE. JEFFERSON confirmed that she was the owner of the property for several years, but that she recently sold the property to Ms. Juanita Grey at a closing that occurred on July 26, 2007. JEFFERSON confirmed that she did not know COWSER, did not sell or attempt to sell the property to COWSER, that COWSER was not involved in her July 26, 2007 sale; and that on June 13, 2007 (the date of W1's sales contract with COWSER) she was the true and only owner of the property.

7. On or about September 7, 2007, law enforcement agents were contacted by Nigel Harris (hereinafter "W2"). W2 reported that he knew COWSER and, in September, 2006, COWSER had told him that he owned numerous properties in the District of Columbia, including 1256 Florida Ave., NE. W2 stated that COWSER agreed to sell him 1256 Florida Ave., NE, and that on September 16, 2006, W2 and COWSER executed a sales agreement for 1256 Florida Ave., NE. W2

presented the affiant with a copy of the agreement. See Attachment D. W2 reported that he paid

COWSER over $17,000 in earnest monies to COWSER, but thereafter COWSER did not respond

to W2's phone calls or contact efforts. W2 stated that COWSER never returned his monies and W2

believes that he still has a legitimate contract to purchase 1256 Florida Ave., NE from COWSER.

W2 reported that COWSER claimed to have purchased 1256 Florida Ave., NE at a D.C. government

tax sale. All information provided by W2 has, to date, proven to be true and accurate regarding this

matter.

8. Affiant has conferred with Mr. Michael Lukenich of D.C. Pretrial Services and confirmed

that COWSER has not informed that agency that he is buying, listing or selling any real estate in the

District of Columbia.

9. Defendant COWSER lives a 1140 Gales Street, NE, Washington, D.C., his PDID number

is 277-028, his FBI#456887P1, and he is a black male, dark complexion, and approximately 61 years

of age.

10. Based upon this information, affiant believes there is clear and convincing evidence that

COWSER has violated two important conditions of this release (selling real estate without permission

of the court and violating a state or local law), and probable cause to believe that COWSER has

committed a felonious crime while on release:

      (1)    With regard to COWSER's failure to refrain selling and/or listing real estate

                in the District of Columbia without permission of the Court while he has

                been on release in his pending case, COWSER has, his release on April 11,

                2007: executed real estate sales agreements, received payments for real estate,

                attempted to sell properties, and attempted to close on properties without

alerting the Court or the Government.

(2)   With regard to COWSER's violation of numerous criminal statutes while he

has been on release, including felony fraud in the first degree under 22 D.C.

Code §§ 3221 and 3222, COWSER has, since his release on April 11, 2007

engaged in criminal conduct that is almost identical to the allegations in the

Government's indictment, and: made false claims of ownership of real

property that he does not own, utilized forged deeds and doctored documents

to support these claims, attempted to fraudulently sell the same property to

multiple persons, made material false statements to prospective buyers, and

fraudulently obtained thousands of dollars in proceeds from the victims of his

fraud.

VI.  CONCLUSION

Based on the foregoing, affiant respectfully submits that there is probable cause to believe

that COWSER has committed criminal acts, and clear and convincing evidence that he has violated

the express conditions of his release.

7

Wherefore, affiant respectfully requests that a bench warrant be issued authorizing a bench warrant for the arrest of COWSER for the above-stated violations of his conditions of release, as well as the above-listed federal and local criminal statutes.

I declare under penalty of perjury that the foregoing is true and accurate. Executed on September 12, 2007.

Jeremy T. Wyesel
U.S. Postal Inspector
United States Postal Inspection Service
Washington Division

8

ATTACHMENT A

# AGREEMENT TO SELL PERSONAL PROPERTY

This Agreement is made on __JUNE  13, 2007__ , between __George A. Cowser__ ,

of __14444 Pa. Ave. SE__ , City of __Washington__ , State of __D.C.__ , Seller,

and __David Eric Bernhardt__ , Buyer, of __818-L St. N.E__

City of __Washington__ , State of __DC__ .

1. The Seller agrees to sell to the Buyer, and the Buyer agrees to buy the following personal property __818-L St. N E Washington, D.C. 2002   3-pedroom, living room, dining room, kitchen w/full basement and garage at rear__

2. The Buyer agrees to pay the Seller $ __150,000.00__ as the total price for the property. The Buyer agrees to pay this purchase price in the following manner: __$5000 DEPOSIT. REMAINDER $ 45,000.—__

__PAYABLE__    __SIX MONTHS FROM RECORDING__

__DATE OF DEED.__

3. The Buyer will be entitled to take possession of this property on __818-L St. N E., Wash, D.C 2002__

__JULY 1 ST 2007__

4. The Seller represents that it has good, marketable, and legal title to the property and full authority to sell the property. Seller also represents that the property is sold free and clear of all liens, indebtedness, or liabilities. Seller agrees to provide Buyer with a Bill of Sale for the property.

5. Unless otherwise noted below, this property is sold in "as is" condition and Seller does not offer any warranties regarding its working order or its fitness for any purpose.

6. Any other terms:

__Sold As Is__

7. This Agreement binds and benefits both the Buyer and Seller and any successors or assigns. Time is of the essence of this Agreement. This document, including any attachments, is the entire agreement between the Buyer and Seller and may only be modified in writing and signed by both Buyer and Seller. This Agreement is governed by the laws of the State of __DISTRICT of COLUMBIA__ .

_[signature]_                                                    _[signature]_
Signature of Seller                                              Signature of Buyer

__George A Cowser__                                              __DAVID  BERNHARDT__
Name of Seller                                                   Name of Buyer

ATTACHMENT B

# Offer to Purchase Real Estate

**BE IT KNOWN,** the undersigned, _David  Bernhardt_ (Buyer), offers
to purchase from _George A Conser_ _C/o Revers r. Propertes LLC_(Owner), real estate
known as _1256 - Florida Ave N.E_ located in the City/Town of _D.C_ said
County of _Washington_, State of _____
property more particularly described as: _2-Story brick building, livingroom, diningroom,
bathroom 3 Bedroom with extend backyard_

and containing _Lot 14    Square 4069_ square feet of land, more or less.
The purchase price offered is _Two hundred Thousand_ Dollars ($ _200,000.00_ ).

Earnest money herewith paid                                         $ _10,000.00_
Further deposit upon signing sales agreement                       $ _12,000.00_
Balance at closing                                                 $ _181,000.00_

                                                    **Total:**     $ _181,000.00_

This offer is conditional upon the following terms:

1. This offer is subject to Buyer obtaining a real estate mortgage for no less than _6 M.O.S._
Dollars ($ _190,000.00_ ) payable over _15_ years with interest not to exceed _4 1/2_
percent ( _____ %) at customary terms with a firm commitment thereto _____
hereof.

2. This offer is further subject to Buyer obtaining a satisfactory home inspection report and termite/pest report within _____ days from date hereof.

3. Owner shall pay _-0-_
 $ _-0-_ Dollars ($ _-0-_ ) upon closing.

4. Said property is to be sold free and clear of all encumbrances, by good and marketable title, with full possession to said property available to Buyer at date of closing.

5. Owner shall include in the purchase price and transfer, free and clear of encumbrances, all fixtures on the property on the date of this offer. The terms of this offer, detailed in the standard purchase and sales agreement to be executed, will determine what items are included/excluded as fixtures.

6. The parties agree to execute a standard purchase and sales agreement according to the terms of this agreement within _____ days of acceptance of this offer.

7. The closing shall occur on or before _12 December_, 20 _07_ at the public recording office, unless such other time and place shall be agreed upon.

8. Other terms: _$190,000.00  due within 6 M.O.S. ON or_
_about at sale or at Refiance._

(Broker), a commission of _-0-_

9. This offer shall remain open until _____ o'clock _____ m., _____, 20 _____
and if not accepted by said time, this offer shall be deemed rescinded and all deposits shall be refunded.

Signed this _____ day of _____ 20 _____

Broker _____ N/A _____

Buyer _____ [signature] _____ Date _____

Buyer _____ PAUL BERNHARDT _____ Date 5/24/07

Owner _____ [signature] _____ Date 5-24-07

Owner _____ GEORGEA CONISER _____ Date 5-24-07

ATTACHMENT C



# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## OFFICE OF TAX AND REVENUE
### Recorder of Deeds - 515 D Street N.W. Washington DC, 20001 Phone 727-5374

# THIS DEED

Made this __27th__ day of __June__ in the year __2007__ by _____

Part ( ) of the first part, and __Joseph M. Jenifer Jr.__

Part ( ) of the se... ...t Reverse Properties LLC

WITNESSETH, that in the consideration of $10__.00 Dollars that part ( ) of ... ...first part does hereby grant unto the part ( ) of the second part in fee simple, ... all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances ... ... same belonging, situated in the District of Columbia, described as follow: Lot numbered 14 in Square numbered 4069 IN a Subdivision made by the Washington Brick, as per plat recorded in Liber County 6 at Folio 120 among the Records of the Office of the Surveyor of the District of Columbia

AND the said par... ( ) of the first part covenants that _____ will warrant specially the property hereby c...... ...;
and that _____ w... ...cute such further assurances of said land as may be requisite.

WITNESS _____ hand ( ) and seal this day and year herein before w... ...

Witness _____                                              _____ (SEAL)
                                                                         Grantor

Witness _____                                              _____ (SEAL)
                                                                         Grant...

WITNESS _____                                              _____ (SEAL)
                                                                         Grantor

State of Maryland
County of Anne George S ) ss.

I, __Krishna Poole__ _____ a Notary Public in and for the District of Columbia, do hereby certify
That Part ( ) to a certain deed b... ...ing date on the __27th__ day of __June__ 2007 And hereto
Annexed, personally appeared before me in said ...... ...said part ( ) being personally well known to me as the
person ( ) who executed the said deed and ac......... ...together to be his/her act and deed.
person ( ) who e... ... the said

                                                         __Krishna Poole__
                                                         NOTARY PUBLIC

Notary Public
Charles County, MD
My Commission Expires: 10-1-2010

Doc# 2002002232
Book:
Pages: __
Filed & Recorded
   01/02/2002   12:46:34 PM
HENRY RILEY
RECORDER OF DEEDS
WASHINGTON D.C. RECORDER OF DEEDS
SURCHARGE

**ATTACHMENT D**

*Paid 7,100 00 9-18-06* [signature]

# Offer to Purchase Real Estate

BE IT KNOWN, the undersigned, _Rosalie Burgess_ _____ (Buyer), offers to purchase from _Reese Freeman_ _____ (Owner), real estate known as _1056 Freeman Dr._ _____ located in the City/Town of _____ said County of _____ State of _Florida_ _____ property more particularly described as: _125 E Florida Ave Washington DC 20202_ _____

and containing _____ square feet of land, more or less.

The purchase price offered is _$60,000_ _____ Dollars ($ _60,000_ ).

This offer is conditional upon the following terms:

1. This offer is subject to Buyer obtaining a real estate mortgage for no less than _____ years with interest not to exceed _____ percent ( _____ %) at customary terms with a firm commitment thereto _____ days from date hereof.

2. This offer is further subject to Buyer obtaining a satisfactory home inspection report and termite/pest report within _____ days from date hereof.

3. Owner shall pay _____ Dollars ($ _____ ) upon closing.

4. Said property is to be sold free and clear of all encumbrances, by good and marketable title, with full possession to said property available to Buyer at date of closing.

5. Owner shall include in the purchase price and transfer, free and clear of encumbrances, all fixtures on the property on the date of this offer. The terms of this offer, detailed in the standard purchase and sales agreement to be executed, will determine what items are included/excluded as fixtures.

6. The parties agree to execute a standard purchase and sales agreement according to the terms of this agreement within _1_ days of acceptance of this offer.

7. The closing shall occur on or before _Sept 20_ th _____, 20 _06_, at the public recording office, unless such other time and place shall be agreed upon. _Ct Ruter..._

8. Other terms: _____

Earnest money herewith paid _____ $ _7,000_
Further deposit upon signing sales agreement _____ $ _6,000_
Balance at closing _Balance all 60,000.00_ _____ $ _13,000_
Total: _____ $ _Dec-18-th Desire to Finance Rest for Bi-Lance of 30,000_

www.socrates.com

© 2005 Socrates Media, LLC
LT 202 • 1 • Rev. 05/05

9. This offer shall remain open until _____ o'clock ___ m., 20 _____ and if not accepted by said time, this offer shall be deemed rescinded and all deposits shall be refunded.

Signed this ___ 18th ___ day of _September_ 20 _06_.

Broker _____ N/A _____

Buyer _Nigel Richardson_ Date _9-15-06_

Buyer _____ Date _____

Owner _George A. Conser_ Date _9-18-06_

Owner _Beverly Conser_ Date _9-18-06_

Attachment 3

FD-302 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    09/11/2007

DAVID ERIC BERNHARDT, date of birth January 15, 1972,
home address 803 7th Street, Northeast, Washington, D.C. 20002,
telephone number (202) 546-0370, was contacted at his residence.
BERNHARDT agreed to conduct consensually monitored telephone calls
to GEORGE COWSER. Telephone calls, identified as number six
(partial) and number seven, were placed from BERNHARDT to COWSER
and are transcribed as follows:

(Background noise)

CW:     Hello GEORGE.

GC:     Yeah.

CW:     It's DAVID.

GC:     What?

CW:     It's DAVID.  I've been trying to get in touch with you.

GC:     Who?

CW:     DAVID.

GC:     DAVID.

CW:     Yeah.

GC:     Man, I've been in the hospital, man.

CW:     Well, I know.  How you doing?

GC:     I'm doin', I gotta back Monday for surgery.

        (Background noise)

CW:     More, more, how's your hand, though?

GC:     Huh?

CW:     Are you all swelled up again?

Investigation on    09/07/2007    at    Washington, D.C.

File #  329A-WF-233884                      Date dictated    09/11/2007

by      SA Mary E. Soudrette:lt; PI Jeremy T. Wiesel

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____ GEORGE COWSER _____ , On __9/7/2007__ , Page __2__

GC:      (Background noise)

GC:      Yeah. The guy took the fissure (PH) outta one arm and
         put it in the other one and put one in my leg.

CW:      Well, I wanna wrap up this stuff and figure out where we
         stand.

GC:      Okay, well, we can wrap it up on Friday, because, ah,
         next week I, I'm gonna be incapacitated. So I'll get
         with you Friday, any time Friday.

CW:      Okay, well where, where are we because you're like, you,
         you...

GC:      (Background noise)

GC:      You can, ah, you can meet me right on Florida Avenue
         because I gotta get that grass cut so the town won't give
         me a fine.

CW:      Because you left me with that letter for that, for both
         twelve fifty-six and for eight eighteen?

CW:      (Background noise)

CW:      Right?

GC:      Well, I told you we can wrap it up Friday.

CW:      Well, but I need to know what I need to bring because
         you, you wrote down ten thousand dollars to close, ah...

GC:      (UI) nothing, we're gonna wrap it up Friday. I just
         wanted to wrap up everything.

CW:      So, where do you want me to call you. We, or what
         time...

GC:      Huh?

CW:      What time do you want me to meet you?

GC:      I can hardly hear you.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of ___GEORGE COWSER___ , On ___9/7/2007___ , Page ___3___

CW:     I said, what time do you want me to meet you on Friday?
        GEORGE.   Hello.

        (Pause in conversation)

CW:     Well we got through that time.

        Let's try calling him back.

.       (End of Track 6)

        (Beginning of Track 7)

        (Background noise, static)

        (Telephone ringing)

        (Radio playing in background)

GC:     Yeah.

CW:     GEORGE.

GC:     Huh?

CW:     We got cut off.  Can you hear me?

GC:     Yeah, I was probably driving through some, ah, a fucked
        up area.

        (Background noise)

GC:     Any time Friday.

CW:     Friday.

GC:     'Cause I gotta get somebody run and cut that grass...

        (Background noise)

GC:     This time they gonna charge me a thousand dollars, man.

CW:     Well, I can cut the grass if we, if we close on the
        property.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____ GEORGE COWSER _____ , On __ 9/7/2007 __ , Page __ 4 __

GC:     See, ah, we can close on the property.  It don't make no
        difference.  It's still gotta be cut.  I ain't payin' no
        thousand dollars for nothin'.

CW:     Okay.

GC:     That shit, that shit is ridiculous.

CW:     But I gave you, you've got a list of the money that I
        gave you, right, seven thousand dollars...

GC:     Yeah, seven, you gave me seven thousand dollars.

CW:     And for, for, for twelve fifty-six, the agreement was.

        (Background noise)

CW:     Well, I know that for eight eighteen, it was only gonna
        be five thousand dollars and then the rest after the
        closing.

        (Background noise)

GC:     No, I didn't say that.  I said earnest money deposit.
        You, you, you said you agreed to five thousand and five
        thousand.  And I only sold you the house for fifty
        thousand dollars.

CW:     Right.

GC:     So, you, you still gettin' the best deal...

        (Background noise)

CW:     Well I know but I...

CW:     Chances don't, you can't get a better deal or nothin'
        nowhere and why.

CW:     I know but I wanna wrap it up because I, I still haven't
        been able to get everything...

GC:     Yeah, well, I wanna wrap it up too.

CW:     So Friday, what time are you gonna be down at?

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of ___ GEORGE COWSER ___ , On ___ 9/7/2007 ___ , Page ___ 5 ___

GC:    No, you tell me.

CW:    Ten o'clock.

GC:    Okay, ten o'clock.

CW:    I'll be at my, my project at twelve forty-four and I'll meet you at, at.

GC:    Alright.

CW:    I'll meet you at twelve fifty-six.  But I think we should talk about what, well.

GC:    (Background noise)

CW:    If I've got, if I've got seven thousand, you wanna close on one of 'em first and then either on, do you wanna close on twelve fifty-six Florida first and then close on...

GC:    I don't care, I don't care.  Which one do you wanna do?

CW:    Well, my point is since, ah, since you asked for five and I've given you seven, can we just do one of 'em and then we'll do the rest of the money later on the other one?

GC:    Well it don't make no difference.

CW:    And I'd rather close on eight eighteen.

GC:    I know you do.

CW:    Because that's the best deal.

GC:    Yeah, I know it's, because I know it's the best deal for the money.  And (UI) because I'm givin' you a price like this, you should never tell me no about nothin' 'cause you ain't never gonna find nobody give you no property that's goin' fifty thousand dollars.

CW:    I've never argued it and I've done it, I've given you everything you've asked for.

GC:    No, you ain't given me everything I asked for.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____ GEORGE COWSER _____ , On ___ 9/7/2007 ___ , Page ___ 6 ___

GC:      (Background noise)

GC:      But, ah, that's neither here, that's neither here nor
         there. You know, I'm, I'm not in no mood for no arguin'
         and I'm tryin' to take care of my business, I'm tryin' to
         make things happen and, ah, I'm gettin' ready to go to
         the closing on the eighteen for the property, ah, after I
         come out of the surgery. And that'll be Wednesday, next
         Wednesday. So, financially I'm, I'm, you know, I'm doin'
         alright, you know, so, I'm doin' it all by myself. I'm,
         I'm eliminatin' niggers and I'm sayin' niggers because
         that's what they are. They all want nothin', they always
         want you to give 'em something and they don't wanna do a
         God damn thing...

         (Background noise)

GC:      You know, I'm not tryin' to fuck you. I ain't gonna
         never try to fuck, because that's not in my make up. I
         don't have no need to fuck nobody. and I don't want
         nobody to fuck me. Hello.

CW:      Yeah, I'm here. I'm tryin' to, I'm tryin' to figure it
         out because we, we're, we're...

         (Background noise)

CW:      We're.

GC:      You tryin' to figure it out. I gave you a price of fifty
         thousand dollars.

CW:      Right.

GC:      I know you wanna close on that one first.

CW:      I did...

GC:      You know, you got, anybody with their right mind would.
         You know, that, I, ah, that is not a problem with me.
         I'm not goin' back on my word. Why would I tell you,
         tell you something. Now, I probably would've went a hell
         of a lot way more than that. And you know it.

CW:      I know it. That's why I'm trying to wrap it up.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____GEORGE COWSER_____ , On ___9/7/2007___ , Page ___7___

GC:    Yeah, I, I know you know it. Then when I come and ask you, when I, when I come to you and say, ah, DAVID, I need two or three hundred, you look at me like I'm crazy when I'm doing you, when I'm doing you a favor.

CW:    Well, GEORGE, I got...

GC:    Because I don't understand it 'cause all that money...

CW:    I, I.

GC:    ...ah, everything you give me gonna be deducted anyway so you ain't losin' a damn thing.

CW:    Yeah, but I still don't have any evidence that I can, that I can buy it.

GC:    Okay, well, you know, you know what, you want the seven thousand dollars back and we can say fuck it? You know, 'cause I ain't, I'm not goin' through no changes. I thought we gonna be like gentlemen and we gonna be like, we gonna do business and then gonna be friends too.

CW:    Well, I've been trying to keep it, I...

GC:    Because a friend, up to a friend and say, hey, man I need seventy-five dollars. If you came to me and tell me you need seventy-five dollars, I'm gonna give it to you. We'll still do that.

CW:    Well let...

GC:    You know...

CW:    Well, let's do it.

GC:    ...and you were with me when I paid that nineteen thousand. So what you, what you done gave me ain't compared to what the fuck I been paid.

CW:    No, I know.

GC:    Okay, so don't be sittin' there...

CW:    But it's.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of    329A-WF-233884

_____ GEORGE COWSER _____ , On _____ 9/7/2007 ____ , Page __ 8 __

GC:     ...telling no evidence.  Why you think I paid nineteen
        thousand, for nothing?  I'll be a damn fool to give up
        nineteen thousand dollars for nothing.

CW:     Well then on, on Friday you'll have all the, all the
        paperwork that you were gonna have ED drop off last
        Wednesday or a couple....

GC:     No, I'm not, I'm not fuckin' with ED no more.  I don't
        fuck with him at all no more.  I'm get, I'm gettin' my
        keys back to all my property and everything.  I'm not
        fuckin' with him no more.

CW:     So Friday we'll work it out one way or the other.  We'll
        either close and I'll give you some money or you'll, or
        we won't be able to and you'll give me money.

GC:     Well, that ain't no problem.  If you want it now, I'll
        give it to you now.  It ain't no problem.  If you, if you
        feel that way.

CW:     Okay.

        (Background noise)

CW:     And (UI) is up to you.

CW:     So do you want me to call you Friday morning or do you
        want me to pick you up or anything or?

GC:     You don't have to pick me up, I'm driving.  I bought me a
        brand new car.

CW:     Good for you.

GC:     That's right, I've been paying cash for it so I don't owe
        nobody's shit.

        (Laughs)

GC:     So you talkin' about money, money's not the problem.  I
        even paid (UI) with twenty-five thousand dollars cash so
        I get you almost seven, seven ain't shit.

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____ GEORGE COWSER _____ , On _____ 9/7/2007 _____ , Page _____ 9 _____

CW: But you got everything sorted out on, on twelve fifty-six...

GC: I've been had it sorted out.

CW: So that you...

GC: But I don't had nobody help me do nothin'.

CW: But you've got it all sorted out so that you're the owner so you can sell it to me.

GC: Yeah, I, I would (UI).

(Background noise)

CW: Alright, well I'll see you...

GC: I would, I would, I would, ah, I would a had it but, ah, the, the smart ass, you know, he gets mad 'cause I won't help him, you know, and, um, and I was fucked up. So (UI) he's ten thousand dollars in the hole, in his rent, and wantin' me to give him some money. Shit, I said, you ain't doin' nothin' for me.

CW: Who's that, the guy...

GC: You know, I ain't givin', I ain't givin' nobody no money for nothin'. Shit...

CW: Who? JOSEPH JENNIFER?...

GC: I won't (UI). Huh?

CW: The, the guy that's listed on twelve fifty-six, JOSEPH JENNIFER or I might have the wrong.

GC: I ain't, I ain't hear you.

CW: Was, who owes you the money, JOSEPH JENNIFER?

GC: No, JOE, JOE doesn't owe me nothin', I said ED.

CW: Oh, ED. I don't know about ED. I haven't seen ED.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of

329A-WF-233884

GEORGE COWSER , On 9/7/2007 , Page 10

GC: I guess you ain't. You know he was wrong but when he (UI) on some God damn finder's fee.

CW: Yeah, that...

GC: I wouldn't a gave him shit.

CW: That was wrong. Well I didn't. I paid him for, I...

GC: Yeah, well I'm just tellin' you.

(Background noise)

CW: I paid him for welding work.

GC: I don't, I don't, I don't play, I don't play no, no, no, no games. See, and he's not gonna fuck up my shit for me because he, 'cause he hungry for money. When he gets money, he don't say, GEORGE, here's dime. I just, ah, I just spent ten, seven thousand dollars in God damn bills on, on three properties. I'm gettin' my shit, I, I'm gettin' ready. I went down and got three evictions. That cost me, shit, over five hundred dollars, shit. Now, I gotta wait until next week before I can get some God damn money off a my money market. But I'm takin' care of everything I have to take care 'cause I'm gonna sell them houses.

CW: Well.

GC: I'm gonna get on gettin' 'em out there. I went and paid the electric bill. That was, I can show 'em to you.

CW: I don't want the electric bills, I just want to.

GC: No, I'm (UI)...

(Background noise)

GC: ...I'm talkin' about to the other properties. You ain't got a God damn thing to do with that, DAVID, you're not listening. I told you what I was doing. That ain't got nothin'....

CW: (UI)

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of _____ GEORGE COWSER _____ , On ___ 9/7/2007 ___ , Page ___ 11 ___

GC:     ...to do with what you and me doing.

CW:     But you've got all the document numbers sorted out for, for twelve fifty-six and eight eighteen so that we can close on it.

GC:     Yeah but you said you wanna close on eight eighteen.

CW:     (Background noise)

CW:     I'd rather close on eight eighteen first because that's the better deal and...

GC:     Yeah, I know you do, I know you do 'cause it ain't no fifty thousand dollars and you can, you can easily get that.

CW:     Right.

GC:     Yeah, I know it.

CW:     Well, I can't easily get it until the deed's in my name but I gave you the...

GC:     Yeah, I know it.

CW:     I gave you the, the money for recording it and you got that. And then you...

GC:     Yeah, but then you gave me, I'll give it back to you. You want the seven thousand dollars back and you said, fuck, seven thousand dollars back. You keep on talkin' about what you gave me. You give me shit compared to what I'm givin' you. How the hell you think you givin' me something? You ain't giving me nothing.

CW:     Well, I'm...

GC:     So anything you gave me, I'll give it back to you. You want the seven thousand dollars back and you said, fuck, I can sell it to anybody and I ain't, I ain't gonna see no fuckin' changes. So I'm, you know, all that does, that shit you tell me, don't mean shit to me. Now if you want your seven thousand dollars, I'll bring you a God damn check (UI) seven thousand dollars and we can say fuck everything. It's as simple as that. You know, I

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of ____GEORGE COWSER____ , On ___9/7/2007___, Page ___12___

CW:     ain't gotta sell you no house for no fifty thousand
        dollars. Shit, you must be out your God damn mind. I'm
        doin' you a favor. You ain't doin' me none. (UI) you're
        not helpin' me at all. I'm helpin' you.

GC:     Yeah, but I've been, I've been...

CW:     And I (UI). I'll tell you what, where you at?

GC:     I'm down at landlord tenant now. I've gotta go back in
        at two thirty 'cause I've got an agreement with my tenant
        at the Yoga studio.

CW:     Yeah, and then you see what I been going through, don't
        you.

GC:     I know, man.

GC:     Yeah, it ain't no motherfuckin' picnic. You guys go down
        there and fuck with that God damn court. I got my
        judgment and I even paid an eviction. That was a hundred
        and forty-five dollars a piece...just for the God damn
        marshal to come up. It's a damn shame that you gotta go
        shit, you gotta go through all that bullshit.

CW:     Well let's do it, let's do it on Friday and if we can
        work it out, I'll give you money, if not, than you just
        give me my money back on Friday.

GC:     Okay, well I'll give it back to you today. You, if you
        don't wanna do it, you don't wait, fuck it. I'm not
        gonna, I'm not gonna kill myself. I'm gonna take care a
        my health.

CW:     Oh...

GC:     I ain't worried about no God damn properly. I'm worried
        about my health. You ain't, you like not considerate
        about my health then I, when you leave landlord tenant
        you call me, I'll bring your God damn check for ten
        thousand dollars (UI). Because see, you, you don't, you
        don't hear nothin', You only hear what DAVID wanna hear.
        So you not understanding nothing. I say I been sick.

CW:     I hear you. I've been...

FD-302a (Rev. 10-6-95)

329A-WF-233884

Continuation of FD-302 of ___ GEORGE COWSER ___ , On ___ 9/7/2007 ___ , Page ___ 13 ___

GC:  I, I, no, You don't hear me. You're only concerned about the property. You don't give fuck if I live or die. If I die, then what?

CW:  I....

GC:  Yeah, that don't mean shit to you. Just call me...

CW:  I.

GC:  ...when you get outta the landlord tenant...

CW:  I don't think that's, I don't think that's fair, GEORGE...

GC:  ...or when you get back home. When you get back home...

CW:  I don't think that's fair, GEORGE.

GC:  When you get home, when you, when you get back on that other end, call me.

CW:  Okay.

GC:  Alright...

CW:  But, but be fair with me too, GEORGE, because I've been looking out for you and I've been.

         (Telephone call ends)

CW:  Okay.

         (Background noise)

JW:  This is Inspector JEREMY WIESEL. The time now is fourteen twenty-three. Today's date is September fifth, two thousand seven. The end to consensual phone call between DAVID BERNHARDT and GEORGE COWSER, phone number two zero two, three three eight eight...

         (Shuffling papers)

JW:  I'm sorry...

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of _____ GEORGE COWSER _____ , On _____ 9/7/2007 _____ , Page _____ 14 _____

329A-WF-233884

JW:    Two zero two, six six four, seven zero six two.

CW:    Six six four, seven oh six.

(End of conversation)

Attachment 4

# D.C. Properties Investments, Inc.

## 703 Maryland Avenue NE

Washington, D.C. 20002

**Voice:** 202-544-2727
**Fax:** 202-544-2727
**Cell:** 202-255-3018
**E-Mail:** drslack@verizon.net

August 31, 2007

Mr. George Cowser
1740 Gales Street NE
Washington DC

> **RE:** REFUND OF SECURITY DEPOSIT ON CONTRACTS
> 5109 CONN AVE. NW, 5233 CONN AVE. NW, 911 JEFFERSON AVE NW,
> 930 QUINCY ST NW, 936 QUINCY ST NW, 29 RANDLE CIRCLE SE,
> and 415 MELLON STREETS SE

Dear Mr. George Cowser;

We have entered into contract(s) for the sell of the above mention properties on or about June 16, 2007. The settlement of these properties was to occur on July 15, 2007 with TIME BEING OF THE ESSENCE. However, in spite of my title companies repeated request for information you have failed to render accurate information to allow us to settle according to the TERMS AND CONDITIONS OF THE CONTRACT...

THEREFORE, I am requesting full repayment of the EIHTY FIVE HUNDRED AND THRITY SIX DOLLARS ($8,536.00) immediately. In as much as you failed to render a good and marketable title I am entitled to a full refund according to the terms of the DEPOSIT paragraph of the contracts.

I told you that the monies I gave you were part of my savings for retirement. I cannot afford to lose this money. In the event you do not pay me accordingly, I shall exercise any and all my legal rights to correct the situation. We both are too old for nonsense. Please pay me back my money. THANK YOU and the best of health.

Sincerely,

John L. Slack

CC:    File

# SUMMARY OF MONEY OWED by George Cowser TO JOHN SLACK

PURCHASER:    John L. Slack
              MARYLAND AVENUE NE
              WASHINGTON DC 20002
              202-544-2727 VOICE
              202-544-0727

CELL:    202-255=3018
EMAIL: DRSLACK@VERIZON.NET

Deposits given to George Cowser:                    $8,536.00
Bank:              Wachovia
Checking Account:  1010152440617
                   John L. Slack
                   Maryland Avenue NE
                   Washington, DC 20002-5233

| ADDRESS | CHECK NUMBER | DATE | AMOUNT |
|---|---|---|---|
| 5109 CONN AVE NW | 1143 | JUNE 15, 2007 | $2,000.00 |
| 5233 CONN AVE NW | 1144 | JUNE 15, 2007 | $2,000.00 |
| 5109 CONN AVE | 1146 | JUNE 22, 2007 | $1,736.00 |
| 930 QUINCY P NW | 1365 | JUNE 17, 2007 | $1,000.00 |
| CASH | | | $  800.00 |
| | | TOTAL | $8,536.00 |

Note_ SEE COPIES OF CASHED CHECKS ATTACKED

## SUMMARY

### COPIES OF CHECKS RENDERED FOR SECURITY DEPOSITS

### CASHED BY GEORGE COWSER

#### CASH GIVEN TO GEORGE COWSER:

| NUMBER | DATE | AMOUNT |
|--------|------|--------|
| 1. | JUNE 26, 2007 | $300.00 |
| 2. | JUNE 30, 2007 | $200.00 |
| 3. | JULY 14, 2007 | $200.00 |
| 4. | AUGUST 16, 2007 | $100.00 |
| | TOTAL CASH | $800.00 |

# WACHOVIA

Wachovia Securities

## ONLINE IMAGE

Account Number: 1010152440617

Check Number
1143

Amount
$2,000.00

Date Posted
06/18/2007



## How To Save This Image

**PC users**
Internet Explorer:
Right-click on the check image, and choose "Save Picture As..."
Others:
Right-click on the check image, and choose "Save Image As..."

**MAC users**
Internet Explorer:
Click & hold on the check image, and choose "Download Image to Disk"
Others:
Click & hold on the check image, and choose "Save this Image as..."
Hide Instructions

https://icid.wachovia.com/webapp/icid_app/servlet/Titanium

9/5/2007

Online Services - Online Image

## WACHOVIA

Wachovia Securities

**ONLINE IMAGE**

Account Number: 1010152440617

Check Number
1144

Amount
$2,000.00

Date Posted
08/18/2007



### How To Save This Image

**PC users**
Internet Explorer:
Right-click on the check image, and choose "Save Picture As..."
Others:
Right-click on the check image, and choose "Save Image As..."

**MAC users**
Internet Explorer:
Click & hold on the check image, and choose "Download Image to Disk."
Others:
Click & hold on the check image, and choose "Save this Image as..."
Hide Instructions

https://icid.wachovia.com/webapp/icid_app/servlet/Titanium

9/5/2007

Online Services - Online Image

WACHOVIA

Wachovia Securities

## ONLINE IMAGE

Account Number: 1010152440617

Check Number
1146

Amount
$1,736.00

Date Posted
06/25/2007



## How To Save This Image

**PC users**
Internet Explorer:
Right-click on the check image, and choose "Save Picture As..."
Others:
Right-click on the check image, and choose "Save Image As..."

**MAC users**
Internet Explorer:
Click & hold on the check image, and choose "Download Image to Disk."
Others:
Click & hold on the check image, and choose "Save this Image as..."
Hide Instructions

https://icid.wachovia.com/webapp/icid_app/servlet/Titanium

Page 1 of 1

Online Services - Online Image

Page 1 of 1

WACHOVIA

Wachovia Securities

ONLINE IMAGE

Account Number: 1010152440617

Check Number
1365

Amount
$1,000.00

Date Posted
06/20/2007

DR. JOHN L SLACK
731 MARYLAND AVE N.E.
WASHINGTON, DC 20002 5233
(202) 544-2517
SLACKJOHN@VERIZON.NET

1365

How To Save This Image

**PC users**
Internet Explorer:
Right-click on check image, and choose "Save Picture As..."
Others:
Right-click on the check image, and choose "Save Image As..."

**MAC users**
Internet Explorer:
Click & hold on the check image, and choose "Download Image to Disk."
Others:
Click & hold on the check image, and choose "Save this image as..."
Hide Instructions

https://icid.wachovia.com/webapp/icid_app/servlet/Titanium

9/5/2007

Attachment 5

1/30/07

John,

Heres your Mother-fuckin money but you better not ever call my house and tell my old lady a got damn thing, because I do not give a fuck about you either

George

WACHOVIA

1-800-WACHOVIA (922-4684)
Date: Sep 7, 2007    Advice D=948584

A fee associated with this service will
be reflected in your current bank
statement. You may redeposit any
NSF/Uncollected checks enclosed
or obtain payment from the maker.

JOHN L SLACK
703 MARYLAND AVE NE
WASHINGTON DC  20002-5233

Acct:    052/101015244061 7

1 Item charged totaling $4,500.00

SEQ#    ITEM AMOUNT
56599    4,500.00

Advice Total $4,500.00

⑈4023331988⑈    00⑈10152440617⑈    ⑈000094858⑈⑈



